McLAUGHLIN MILL SUPPLY COMPANY ET AL. *v.*
LAUNDRY SERVICE, INC., ET AL.

[No. 14,355. Filed February 17, 1933.]

694

*J. B. Walters, William J. Whinery, John F. Cody* and *Ibach, Gavit, Stinson & Cody,* for appellants.

*Tinkham & Galvin,* for appellees.

BRIDWELL, J.—On March 30, 1932, this court rendered an opinion in this cause, which is reported in the 180 N. E. 483. A petition for rehearing was filed and the court, upon further consideration, has reached the conclusion that a rehearing be granted.

This action was instituted by the North State Publishing Company against the Laundry Service, Inc., the plaintiff in the action, by its complaint seeking to recover a judgment on four promissory notes executed to it by the defendant, and to have a receiver appointed to "manage, conduct and continue" the business of the defendant, said defendant being engaged in the business of operating a large modern laundry in the city of Hammond, Indiana. An answer of general denial was filed to this complaint, and on December 2, 1929, the court appointed one Charles L. Surprise as receiver "to take

over, operate, maintain and continue the business . . . until further order." The receiver named qualified as such on the day of his appointment.

Following the appointment and qualifying of the receiver numerous creditors of the Laundry Service, Inc., among whom were the appellants herein, filed their several intervening petitions to be made parties, and it was so ordered. Each of the appellants filed a cross-complaint to recover an amount alleged to be due for labor, material, or both, furnished to the Laundry Service, Inc., for use in the erection and construction of a building on certain real estate owned by said corporation and to foreclose a mechanic's lien against said property, making parties defendant thereto the Laundry Service, Inc., Charles L. Surprise, receiver for Laundry Service, Inc., and the various creditors of Laundry Service, Inc., who held or claimed any lien against said property, including as party defendants the First Trust and Savings Bank, which held a $25,000 mortgage against the property, and the First Trust and Savings Bank, as trustee, the holder of a $7,500 mortgage.

After the issues were closed on the complaint and the several cross-complaints filed the cause was submitted to the court for trial and judgment. The court made a general finding determining and finding the amount due each of the parties asserting any claim against the Laundry Service, Inc.; the existence and right of foreclosure of claimed liens; the status of each lien in regard to its priority in connection with all other liens asserted and found to be valid liens, and, in addition, further found that the real estate involved and the improvements thereon were in the possession of Charles L. Surprise, as receiver for the Laundry Service, Inc., acting under the appointment of the court in this cause, and that said property should be sold by said receiver under the order and direction of the court, *subject to the lien*

*of the First Trust & Savings Bank, Trustee,* the proceeds of the sale to be distributed by the receiver under the order and direction of the court in the payment of costs and in the payment of the liens found to exist, except the lien of said First Trust and Savings Bank, Trustee, "in the following order of priority, to-wit: (1) To the payment of the costs and accruing costs herein. (2) To the payment of the amount found due the cross-complainants, Crane Company, a corporation; Electric Service Engineering Company, a corporation; McLaughlin Mill Supply Company, a corporation, and Rufus Danner on the liens of said several cross-complainants as hereinabove found, and the amount found due the defendant, First Trust & Savings Bank of Hammond, Indiana, a corporation, on the construction mortgage as hereinbefore found, together with interest at the rate of six per cent per annum as specified in said mortgage and together with the interest on the liens of said cross-complainants at the rate of six per cent per annum from this date, and if the proceeds of said sale shall not be sufficient to pay said claims in full then such payment shall be prorated in the proportion that the amount of each claim bears to the total amount of such claims. (3) To the payment of all unsecured creditors of said defendant, Laundry Service, Incorporated."

Other findings as to the sale of property not covered by any lien and the distribution of the proceeds thereof were made, but as no question is raised as to their correctness these need not be considered.

Judgment was thereafter rendered in favor of each of the parties found to have a claim against the Laundry Service, Inc., for the several respective amounts found to be due from such corporation, and as a part of such judgment it was decreed that the real estate owned by said Laundry Service, Inc., and against which the several liens were asserted, "together with all the

improvements thereon and all machinery, tools and equipment and all rights, choses in action, bills receivable, accounts receivable, and all other property of every kind and nature owned by said Laundry Service, Incorporated, be sold by the receiver herein, Charles L. Surprise, under proper order of this court as to time and terms of sale and without relief from valuation and appraisement laws, subject, however, to the mortgage lien of the defendant, First Trust & Savings Bank, Trustee, as herein adjudged and decreed, and that the proceeds of the sale of all such property shall be applied, first, to the payment of the costs and accruing costs and charges of this action; that the proceeds of the sale of all such property as is covered by the liens of the claimants herein shall be applied, after the payment of the costs and charges aforesaid, as follows: First Trust & Savings Bank; McLaughlin Mill Supply Company, a corporation; Crane Company, a corporation; Electric Service Engineering Company, a corporation, and Rufus Danner; and if the proceeds of said sale be insufficient to pay all of said claims in full that such proceeds be applied thereon pro rata; that the proceeds of the sale of such property as is not covered by the liens of the claimants aforesaid, after the payment of the costs and charges aforesaid, shall be applied to the payment of all creditors, both secured and unsecured, pro rata; that if there be a surplus from the proceeds of the sale of the property covered by the liens of the claimants herein after their payment in full, then such proceeds shall be applied to the unsecured creditors of said defendant, Laundry Service, Incorporated, and if there be any surplus after the payment of all such claims the same shall be held by the said receiver subject to the further order of this court."

Each of the appellants filed a separate motion to modify the judgment, and each filed a separate motion

for a new trial. The motions so filed were each over-ruled and each appellant excepted to each of the rulings on his or its separate motions. This appeal was then perfected, each appellant assigning as error the adverse ruling on his or its respective motions.

In each of the separate motions for a new trial the causes assigned therefor are as follows: (1) The decision of the court is not sustained by sufficient evidence; (2) the decision of the court is contrary to law.

The controversy presented by the record on appeal is as to the priority of the various liens found to exist against the real estate owned by the Laundry Service, Inc., and the improvements thereon. No question is made as to the correctness of the amount of any judgment rendered in the cause in favor of any person who secured a judgment therein, nor of his or its right to recover a judgment against the original defendant.

The evidence discloses the following material facts necessary for consideration in determining the questions of priority between lien holders: The Laundry Service, Inc., purchased from one Carl Kaufman the real estate involved in this proceeding for the sum of $12,500. Of this amount $5,000 was to be paid in cash, and the balance of the purchase price to be evidenced by two promissory notes, one for $2,500 payable on or before two years after date, the other for $5,000 payable on or before three years after date, each note to bear 6% interest payable semi-annually, *and said notes to be secured by a second mortgage.* On May 20, 1929, the vendor, Carl Kaufman, received from the Laundry Service, Inc., the sum of $5,000 to apply on said purchase price, and executed to said corporation the following written instrument: "Hammond, Indiana, May 20, 1929. Received of Thomas A. Cunningham for Laundry Service, Inc., the sum of Five Thousand Dollars ($5,000) to apply on the purchase price of

Twelve Thousand Five Hundred Dollars ($12,500) for the purchase of Lots Seven (7) and Eight (8) in Kaufman's Industrial Addition to Hammond, Indiana. The balance of the purchase price to be paid as follows: $2,500 on or before two (2) years after date; $5,000 to be paid on or before three (3) years after date, bearing 6% interest payable semi-annually, evidenced by two (2) notes of the above amounts, secured by a second mortgage. . . ." On August 1, 1929, the Laundry Service, Inc., executed to the First Trust and Savings Bank, as trustee, its mortgage on the real estate purchased from Kaufman to secure the payment of the two notes agreed to be given evidencing the unpaid amount of the purchase price. (The beneficiaries of this trust mortgage were Kaufman and others, who owned the real estate sold to Laundry Service, Inc.) This mortgage contained the following provision: "This is a second mortgage."

After the purchase of said real estate the Laundry Service, Inc., commenced the construction of a building thereon to be occupied and used in conducting a general laundry business. This work was begun during the month of May, 1929, and continued thereafter until the building was completed and all equipment necessary for use in connection with the business installed. The last of the work was completed about November 16, 1929. Several different contracts were let, and extra work and material were furnished by different contractors before the final completion of the improvement on the real estate purchased.

The appellant, McLaughlin Mill Supply Company, began furnishing material that was used in the construction of said building on May 29, 1929, and the last material furnished by it was on October 8, 1929. Appellant, Rufus Danner, the contractor who was to erect the building, commenced his work on May 29, 1929, and

during the erection of the building contracted for extra work that was finished on October 25, 1929. Appellant, Electric Service Engineering Company, had two contracts, one for furnishing and installing the lighting system, the other for the power system. Work was begun on June 20, 1929, and completed November 16, 1929. Each appellant filed notice of intention to hold a mechanic's lien upon the real estate in question within the time allowed by statute for so doing, and each of said notices was duly recorded as required by law.

On July 1, 1929, the Laundry Service, Inc., received a warranty deed from Carl Kaufman and wife conveying to it the real estate upon which the building was then being constructed. On August 1, 1929, the said Laundry Service, Inc., executed two mortgages on said property, one of $25,000 to the First Trust and Savings Bank, the other, the mortgage hereinbefore mentioned, for $7,500 to the said bank, as trustee. The mortgage for $25,000 did not contain any provision showing for what purpose the proceeds of the loan secured were to be used. The $7,500 mortgage recites that it is a second mortgage and does not disclose that the debt by it secured is for unpaid purchase price of the real estate therein described. Both mortgages were duly recorded on August 6, 1929, the $25,000 mortgage at 11 o'clock a. m., the other at 2:30 o'clock p. m.

Most of the fund derived from the loan made to the Laundry Service, Inc., and secured by the $25,000 mortgage was expended in payment of amounts due to contractors furnishing material, equipment and labor for the improvement constructed. In accordance with the agreement between the mortgagor and mortgagee this fund was disbursed by the bank, payments being made by the bank to the various contractors of the amount certified to be due by the architect in charge of the construction of said building for the Laundry Service, Inc.

The appellant, Electric Service Engineering Company, received from the bank the sum of $929.99 during the progress of the work, and appellant, Rufus Danner, while the work was being done and before its completion, received from the bank three payments aggregating $8,743. Appellant, McLaughlin Mill Supply Company, received no payment, but all appellants continued to furnish labor, material or both after said $25,000 mortgage was recorded. Other contractors not appealing were paid in like manner from said fund, and there remains therein an unexpended balance of $486.30. Some of the various contractors asserting liens knew at the time of the execution of their several contracts that a mortgage loan was to be secured from the bank and the money loaned disbursed by the bank in part payment for labor, material and equipment.

In the case of *Ward* v. *Yarnelle* (1910), 173 Ind. 535, 91 N. E. 7, 15, in considering a case in many respects similar to the instant case, and where, among other questions presented and decided, was the question of priority of liens between persons holding mechanic and mortgage liens against certain real estate, which liens accrued and attached during the erection of a building on such real estate, and where the proceeds of the mortgage loan were used in paying for labor and material to complete the building, our Supreme Court said: "The mortgage purports to have been executed for the purpose of raising funds to complete a building and to equip it, and the evidence discloses that it was about ready for the roof when the mortgage was executed. It was then a substantial part of the real estate, and as between the owner and the mortgagee was real estate, so that we are compelled to take into account the condition of the building. It is not sufficient to postpone the mortgage lien to say that the mortgagee was bound to know that it must be completed, for those who per-

formed labor and furnished material after the mortgage was executed were equally bound to take notice of the mortgage and the disclosed purposes of its execution, and could not ignore them. They all engaged in a common enterprise, and none of them are in a situation to claim priority; their equities are equal.

". . . If the building had not been begun when the mortgage was executed, the statute would have fixed the priority, but here we have a case where the structure, manifestly of considerable dimensions, was about ready for the roof. The savings bank was not called on to take a mortgage for its protection, but voluntarily did so, knowing that the building in its then condition was practically worthless for any purpose as a building, and that it must be completed. Its action was an invitation to materialmen and laborers to complete the structure, and they in turn had notice of the specific lien and its terms. In good conscience neither ought to have priority over the other. The contribution of each increased the security of the other. In some states it has been held that where the mortgage is given for the purpose of constructing a building, and the money is so used, the mortgage has priority both as to the land and building. . . .

"That, however, is a different proposition from the taking of a mortgage during the process of erection. The element of notice of the objects of the mortgage, either by the mortgage itself, *or in some other way*, is important and controlling, so that the materialman or laborer shall be fully advised in advance, and that the ordinary rules of law applicable to mortgages for future advances, as affecting junior incumbrances, ought to, and do obtain.

"The terms of the mortgage amount to an agreement that the proceeds shall be applied on construction account, and the materialmen and laborers had a right to

have it so applied, and if the money was turned over to the association, and by it diverted to other purposes, and was not applied on construction by it or by the mortgagee, the latter could have little claim in equity to share in the fund arising from the property. But if the savings bank made payments on account of labor and material in the building, as it was entitled to do, and had practically agreed under the mortgage to do, *or the money was in fact so applied,* then, upon the clearest principles of equity and justice, the claims so paid and the rights to liens for them should be taken as embraced in the specific lien of the mortgage, not upon the ground of subrogation, but on the ground of keeping the claim and the accompanying right to a lien alive for the protection of the mortgagee, and all the more must this be true if at the time the mortgage was given or the money advanced the property was not equal in value to the money advanced. The other lien claimants are in no worse position than they would have been if no mortgage had been given and the claims of those who had been paid from the fund had filed notice of their claims so that the case should stand as the substitution of one specific lien for the right to other specific liens.

". . . The contribution to that end was ratable among all, and compensation should be on the same basis. Here was notice to the materialman and laborer, that the proceeds of the mortgage were to be applied to the same class of claims as their own, if they furnished the necessaries for completing the building, and they are bound to take notice of the equity thus created. The mortgagee was bound to take notice of the equities which would arise from the fact of the employment of labor and the use of material to complete the building and enhance its security. . . . The savings bank should be entitled to all sums paid by it, or under its direction, or for its benefit, for material or labor used in the con-

struction of the building. . . . The property should be sold as an entirety and the proceeds paid to the discharge of the mortgage of the savings bank and to the claims of those who are entitled to mechanics' liens, as one class. . . . If the property shall not sell for a sum sufficient to pay all the claims of the class, the proceeds should be pro rated." (Our italics.)

While the mortgage in the case now before us does not disclose the purpose of the loan the evidence does disclose its purpose, and that the money loaned (except the balance of $480.30 unexpended) was used in payment for labor, equipment and material furnished for the construction of said building. It further discloses that at least part of the appellants, and other parties asserting mechanic liens, but not appealing, had notice of the purpose of the loan obtained and of the expenditure of the money secured in discharge of debts incurred in the erection of the building, for which debts mechanic liens, under proper notice and procedure, might have been asserted and enforced. Our statute (Section 9834 Burns R. S. 1926) provides that there shall be no priority so far as liens of mechanics and materialmen are concerned. The principles of equity stated in the case of *Ward* v. *Yarnelle, supra,* require that equal priority with the mechanics' liens be given to the $25,000 mortgage lien, at least, in so far as the money derived from the loan was used in the construction of the improvement. We are of the opinion, that under the facts proven in this case, the several mechanic liens and said mortgage lien are of equal priority and of the same class, and we so hold.

The remaining question necessary to be determined is as to the priority of the $7,500 mortgage given by the Laundry Service, Inc., to the First Trust and Savings Bank, as trustee. Is it senior or junior to the mechanic liens and the mortgage lien of $25,000 hereinbe-

fore held to belong in the same class? It purports on its face to be *a second mortgage,* but the decision of the lower court is in legal effect that it is a first lien and senior to all other liens found to exist, the decision of the court being that the property involved should be sold subject to said lien, and the judgment rendered so providing.

The evidence establishes the fact that the two notes secured by this mortgage were given pursuant to the agreement of the vendor and vendee at the time the Laundry Service, Inc., purchased the real estate, upon which the building was erected, from Carl Kaufman. It was then agreed between the parties to the transaction that payment of the unpaid balance of the purchase price would be deferred; that the amount still owing would be evidenced by two notes and that these notes would be secured by a second mortgage. This purchase was on May 20, 1929; the deed of conveyance was executed July 1, 1929; the mortgage August 1, 1929. So long as the legal title remained in Carl Kaufman no lien existed in his favor. As a general rule when real estate is sold and deed executed, and at the time of conveyance a part of the purchase price is unpaid, an implied equitable lien arises in favor of the vendor which is superior to any lien thereafter suffered or created. We know of no reason, however, why such a lien can not be waived by the person, or persons, in whose favor it arises. The Supreme Court of this state, in the case of *Harris* v. *Harlan* (1860), 14 Ind. 439, said: "By taking a mortgage to secure the unpaid purchase money, the vendor waived the implied equitable lien which he otherwise might have had for the payment thereof, and created an express lien. Although the implied and express liens are both intended to effect the same purpose, and both on the same prop-

erty, yet they are, in their nature so different, that they can not both exist as to the same object, at the same time, and for the same purpose, because they are inconsistent. One is a mere equity, based upon the idea that the vendee holds the legal estate in trust for the payment of the vendor. The other puts the legal title in the vendor and makes him the trustee—destroys, or at least merges the implied lien, by creating the express lien, and throwing the trust on the vendor, the mortgagee." See, also, *Cassidy* v. *Ward* (1919), 70 Ind. App. 550, 123 N. E. 724, and cases cited on page 557. It is also held that when a vendor's lien has once been waived it can not be revived. *Cassidy* v. *Ward, supra,* and cases cited on page 558.

The mechanic liens involved here were created in the manner provided by statute and, under the facts proven, would be prior to both mortgage liens, but for the principles of equity stated in *Ward* v. *Yarnelle, supra,* as it is provided by statute (Sec. 9834 Burns R. S. 1926), that "all liens so created shall relate to the time when the mechanic or other person began to perform the labor or furnish the material or machinery, and shall have priority over all liens suffered or created thereafter, except the liens of other mechanics and materialmen, as to which there shall be no priority."

There is no question of fraud or deceit in this case that might avoid the waiver made by the vendor. When the real estate was sold, upon which the building was thereafter erected, it was, as has been heretofore stated, understood by the parties to the sale that the unpaid purchase price should be secured by a second mortgage. The record does not show any pre-existing mortgage, and it is apparent that both vendor and vendee had in mind that a mortgage to be executed by the vendee was to be placed upon the property sold which should be a superior lien to the $7,500 mortgage also to be there-

after given. On August 1, 1929, the vendee, Laundry Service, Inc., did execute the two mortgages here involved, one to the First Trust and Savings Bank, being the one hereinbefore held to be of equal priority with the mechanic liens, the other, to the said First Trust and Savings Bank, as Trustee, this last mentioned one securing the amount yet owing for the real estate purchased, which states it is a second mortgage, and which was given for the benefit of the vendor, Carl Kaufman, and those interested with him.

We are of the opinion that, under the facts established by the evidence and hereinbefore stated, the mortgage given to said bank, as trustee, is a junior lien to that of the other mortgage involved, and to all liens of equal priority with said other mortgage. We hold that the court erred when it decided that the property should be sold subject to the lien of said $7,500 mortgage held by the bank, as trustee, and that its decision in that respect is not sustained by sufficient evidence and is contrary to law. It follows that the court erred in overruling each of the several motions of the appellants for a new trial.

Having reached the conclusion that a new trial should be granted we need not consider the other error assigned by each appellant as it is based upon the court's action in overruling the several motions to modify the judgment rendered.

Judgment reversed with instructions to sustain the motion of each appellant for a new trial and for further proceedings in conformity with this opinion.