## LOUIS ROWLAND, d/b/a BLANKENSHIP & ROWLAND, et al. v. SEWELL LOWE and Wife et al.— 326 S. W. (2d) 681.

Middle Section.   January 12, 1959.

Certiorari Denied by Supreme Court July 27, 1959.

Clarence L. Cummings, Murfreesboro, for appellants.

Alvin B. Collins, Smith & Sellers, William E. Mason, Murfreesboro, for appellees.

I

SHRIVER, J.  This suit involves the enforcement of mechanics' and materialmen's liens as provided in sections 64-1101 et seq., T. C. A.

The bill of complainant was filed in the Chancery Court at Murfreesboro, Tennessee, by Louis Rowland d/b/a, Blankenship & Rowland and B. D. Hight d/b/a, Hight Electric Service, who sued on behalf of themselves and all other creditors and/or lien holders of Sewell Lowe and/or Raymond J. Horton. The defendants named in the bill are Sewell Lowe and wife, Cornelia S. Lowe, Edith W. Haynes, a widow, and Raymond J. Horton, a non-resident.

Edith W. Haynes was made a defendant because the record title to the property in question stood in her name at the time suit was brought, although she had sold it to Lowe and wife sometime prior to the events which gave rise to this suit.

The original bill alleges in substance that on the 19th of June 1956 the defendants Sewell Lowe and wife and defendant Raymond J. Horton entered into a written contract by the terms of which the said Sewell Lowe and wife agreed to sell and convey the property here involved to Horton for $5,250, payable $500 in cash and $1,775 within 90 days from date of delivery of the deed, the balance of $2,975 to be evidenced by purchaser's note secured by a vendor's lien retained in the deed, payable in monthly installments of $50 each with interest at 5% and with the right to pay additional amounts at any time.

The contract further provides:

"The purchaser agrees to forthwith begin the construction of a building on said lot to be used as an automatic car washing building, and to prosecute said building with due diligence; it being contem-

plated that such building will be completed within ninety days from this date.

*    *    *    *    *    *

"The purchaser obligates himself to pay all sums for labor and materials in the construction of the improvements on said lot, and in no event shall the sellers be liable, nor shall there be any lien on the lot of ground herein contracted to be sold, in favor of any laborer or furnisher of material to such construction."

It is further alleged that the defendant Raymond J. Horton, armed with said contract, proceeded to get a building permit and to construct a building on said lot and to make contracts and agreements for the purchase of materials and the hiring of labor to construct said building; that by contract with the said Raymond J. Horton complainants furnished certain materials, supplies and labor which were used and performed in the construction of said building; that construction was begun on or about July 2, 1956 and was completed about September 1, 1956; that on September 15, 1956, complainant Louis Rowland executed and filed for record in the Register's Office of Rutherford County, Tennessee, a notice of lien on the property involved and that complainant B. D. Hight likewise filed a notice of lien on September 20, 1956; that payment for said material, supplies and labor was demanded of the defendants but was refused.

The bill named certain other individuals and firms who had furnished labor and material in the construction of the building for which they had not been paid setting out the amount owing each.

The bill avers that the complainants complied with all the statutes in the protection of their liens on the property involved here.

It prays (1) For subpoena; (2) That complainants have a decree against the defendants, Sewell H. Lowe and wife, Cornelia S. Lowe and Raymond J. Horton, for the amount of their respective claims plus interest and costs, (3) To secure the payment of said judgment that an attachment be issued and levied on the property described in the bill, (4) That the said property be sold in satisfaction of said decree, and (5) For general relief.

Defendants demurred to the bill but the demurrer was overruled.

The defendants Sewell H. Lowe and wife answered admitting the contract with Horton and the erection of the building but denying knowledge of the other facts set out in the bill with respect to the material furnished and the work done, and demanding strict proof thereof, and, generally, denying that the complainants are entitled to a lien on the property superior to that of defendants Lowe and wife.

After a hearing the Chancellor filed the following memorandum;

"Lowe contracted to sell a tract of land to Horton.

"Among other things the contract provided as follows:

" 'The Purchaser agrees to forthwith begin the construction of a building on said lot to be used as an automatic car washing building, and to prosecute said building with due diligence; it being contemplated

that such building will be completed within ninety days from this date.'

"This contract was not placed of record.

"Horton took possession of the premises and erected the building required by his contract with Lowe. Lowe, who conducted a business adjoining the premises, observed almost daily the progress of the construction of the building. He never advised any of the furnishers or mechanics of his rights under the contract. After the completion of the building Horton absconded, leaving Lowe unpaid under the contract and leaving workmen and materialmen, who furnished labor and materials for the building, unpaid.

"This suit presents a controversy between Lowe and claimants of mechanics' and materialmen's liens over priority of claims. Our authorities are in some conflict on the subject, but this Court feels that the facts of this case bring it more nearly within the reasoning of Lee v. Gibson, 104 Tenn. 698, [58 S. W. 330.] It therefore follows that the liens of mechanics and furnishers are superior to that of Lowe.

"Knox Bigham
_____
Chancellor"

Pursuant to said memorandum, a decree was entered in accordance therewith and, to this decree, the defendants duly excepted and prayed an appeal and perfected same to this Court.

## II

### —Assignments of Error—

There are ten assignments of error which complain of the decree of the Chancellor adjudging that the petitioners are entitled to liens in their favor on the lot and building involved here and to so much of the decree as adjudges that the liens of the complainants are superior to that of defendants Sewell Lowe and wife, and to so much of the decree as holds that the liens of appellees attach to the fee in the lot and building rather than merely to the equitable interest of Horton in same. The 9th assignment is to the effect that there is no evidence to support the allegations of the original bill that notice of the lien was given appellants as required by statute; and the 10th assignment complains of the overruling of the demurrer.

## III

The record indicates that there is no real dispute as to the amounts of the claims set out in the bill nor as to the question of notice of liens and other necessary steps to perfect same. The Chancellor announced in the course of the proceedings that if there was a dispute as to the amount or as to whether a particular claimant had perfected his lien according to the statute, that matter would be referred to the Master. Subsequently, a decree was entered reciting that each of the complainants had a valid and subsisting lien upon the property for such labor and material, but there was no order of reference.

As to the 10th assignment which is to the effect that the Chancellor erred in overruling the demurrer, this Court is satisfied that the general demurrer filed by the

defendants was properly overruled. Assignments 9 and 10 are overruled.

## IV

The record shows that defendants Sewell H. Lowe and wife entered into a contract to sell the property involved here to Raymond J. Horton and to deliver to him a deed to said property after certain conditions were performed.

■ While the contract recites that $500 cash in hand was paid with the execution of the contract, the proof shows that no cash was paid. However, the property was turned over to Horton who proceeded to carry out his part of the bargain wherein he agreed to forthwith begin the construction of a building on the lot, to be used as an automatic car washing building. The record further shows that during the progress of the construction Mr. Lowe, whose business was next door to the lot on which the building was being constructed, was on the ground observing the erection of the building from day to day. Each of the several witnesses who testified stated that they talked to Mr. Lowe and that he was on the ground observing the construction of the building from time to time. One of the men who delivered the materials to the lot in the course of the construction said that he saw Mr. Lowe on the lot and talked to him two or three different times. Complainant Hight saw him and talked to him several times and testified that Lowe took some part in the supervision of the work on the building.

Robert Maxwell, one of the partners in Tilford Lumber Company, a claimant herein, testified that a number of times he saw Mr. Lowe on the premises where construction was going on. When asked how often he saw him there, he answered, "I would say almost every day.. I'd

say at least every two days." To the same effect was the testimony of Mr. Earl Smitty, Jr.

The record also shows that Mr. Lowe did not inform these workmen and materialmen of his contract with Horton nor of his claim that said contract provided that there would be no liability on his part for material and labor furnished on said building.

The record further shows that this contract, on which the defendants rely, was never recorded and, therefore, there was no constructive notice of same to these workmen and materialmen.

After the building was completed Horton disappeared from the scene and is alleged to have gone back to Detroit, Michigan. He did not pay the bills nor did he pay Lowe.

Subsequently, Lowe and wife recorded their deed to the property which, as hereinabove stated, had stood in the name of defendant Edith W. Haynes on the records at the Register's Office until after this suit was begun.

After Horton's default Lowe took possession of the lot and building and has used or leased it since that time.

Under these circumstances, was it error for the Chancellor to hold that the lien of the mechanics and materialmen are superior to any claim of a lien of defendants Lowe and wife?

The Chancellor stated that he felt that the facts of the case brought it more nearly within the reasoning of Lee v. Gibson, 104 Tenn. 698, 58 S. W. 330, and therefore held that the liens of the mechanics and furnishers are superior to that of Lowe.

In Lee v. Gibson, it was said by the Court that one of the inducements for the sale and conveyance of the lot in question to Gibson was that he agreed to improve same with a two story dwelling house according to plans and specifications prepared by Gibson and to further improve it by putting a neat substantial fence around it, all the improvements to cost not less than $2,500 and to be completed in eight months from the date of the contract.

It is further recited that before the registration of the contract and deed the vendee began erection of the house as he was obligated to do and continued the work of improvements until his death in the following August. At his death, bills for materials and labor were due and suit was filed to enforce liens against the property as being superior to those of the vendor.

The Court then asks this question;

"Having vested title in Gibson, and placed him in possession of the lot under a contract to build this house according to plans and specifications and at a price approved by the vendor, upon what equitable principle can the latter now decline to recognize the claims of laborers and materialmen who aided this vendee in his effort to comply with his contract?"

In answer to this question it is observed that when Bailey imposed the obligation, as a matter of law, he was bound to know that if Gibson failed to pay, liens in favor of laborers and materialmen would arise, which might be enforced against the property. There was a provision in the instrument which undertook to protect the vendor against loss by such liens but the Court held that the liens of materialmen and laborers were superior to that of the vendor.

It was observed in the opinion that the case is covered by that of Ragon v. Howard, 97 Tenn. 334, 37 S. W. 136, 138.

In Ragon v. Howard, it was said that it is and has been the policy of our law to protect and to enforce the liens of mechanics and furnishers and not to allow them to be defeated by any technical niceties of construction.

It is further observed in the opinion by Mr. Justice Wilkes that the legal title to the property was in the Investment Company involved in said cause, and the opinion continues;

"It is plain that the investment company allowed Howard to take possession of the lot, and treat it as his own, and that its contract clearly contemplated that Howard should erect the buildings with the expectation and intention of putting the legal title in him when the buildings were completed; and it is also evident that it expected and stipulated to be released from all liability for liens of mechanics and furnishers, and believed it had done so by the terms of its contract with Howard. The complainants, however, had no knowledge of this agreement between the company and Howard, and seeing the latter in possession and dealing with it as his own, took it for granted that he was the owner. Under these circumstances, have they liens on the property in controversy? The exact question here presented has not been decided in Tennessee."

The Court then refers to an Illinois case [Henderson v. Connelly, 123 Ill. 98, 14 N. E. 1] where the facts are similar to those in Howard case and quotes with approval from that case as follows;

"Certainly no principle of equity or fair dealing would sanction a precedent of that character. The vendors, by their contract, have subjected their title to the property to the lien of the petitioner; and the decree properly, in our opinion, authorized a sale of the legal title and a priority of payment to the petitioner." Citing several cases as authority.

The opinion in Ragon v. Howard continues;

"When a vendor, holding the legal title, consents for and directs a vendee to have improvements placed upon the property, with the expectation and intention of putting the legal title in him when the buildings are completed, if the legal title is thus placed the lien of the mechanic attaches as against both parties. Rollin v. Cross, 45 N. Y. 766. In Warvelle on Vendors, (volume 1, p. 209, sec. 23) it is said, in substance, that where a vendor, by his contract of sale, expressly authorized the vendee to make erections and improvements on the premises, and particularly if he agrees to advance money to aid in such improvements, and, before the termination of the contract and notice thereof, a mechanic performs labor or furnishes material for the erection of buildings on the land, the latter will not be required to look alone to the title held by the vendee, but may enforce his lien against the legal as well as the equitable title. To the same effect is Phillips on Mechanics' Liens (3d Ed.) sec. 69, citing and commenting on many cases which proceed upon the idea that under such circumstances the party purchasing and in possession is the 'owner,' in the sense of the statute, and unless he shall be so considered mechanics and materialmen will be defrauded of their liens."

In 36 Am. Jur. at page 40 under title "Mechanics Liens" it is said;

"The owner or party liable for the improvement may, on his part, be estopped from asserting a defense against the lien claimant. Thus, one having rights in property who, with knowledge of those rights, sees persons entering into contracts which may furnish a basis for claims under the mechanics' lien laws may be estopped to assert such rights." (Citing cases)

In Miller v. Mead, 127 N. Y. 544, 28 N.E. 387, 13 L. R. A. 701, it was held that a provision in the contract of sale that mechanics' liens should be subsequent to those of the vendor would not be given effect so as to destroy the mechanics' lien on the vendor's interest in the property on which, by the terms of the contract of sale, the improvements were expressly required by the vendor. The Court observed that such a stipulation in the contract amounted to an attempt to circumvent the statute and defeat the rights given by it to persons furnishing labor and materials and that the Courts would not enforce same against the furnishers of labor and material.

It is pointed out in the notes in 36 Am. Jur. Sec. 90 (Mechanics' Liens) that in Nebraska (as in Tenn.) the statute provides for liens made by virtue of a contract or agreement with the owner or his agents, and under this statute it was held in Bohn Mfg. Co. v. Kountze, 30 Neb. 719, 46 N. W. 1123, 12 L. R. A. 33, that where a vendee of real estate, under a contract of sale which contained a stipulation that the purchaser should construct a building upon the premises, erected a building thereon, the

laborers and materialmen were entitled to a lien against the premises paramount to the lien of the vendor.

In section 90 (36 Am. Jur.) it is also said that a vendee under an executory contract of sale is not, merely because of such relationship, the vendor's agent, within the purview of statutes giving mechanics' liens for improvements made by agents, but the text continues;

"However, where the contract obligates the vendee to erect buildings or make other improvements, the contract constitutes the vendee the 'agent' of the vendor in making the improvements, under a statute giving a lien for work done under a contract with the owner or his agent, and therefore subjects the estate of the vendor to mechanics' liens for work done or material furnished."

In Am. and Eng. Ann. Cases, Vol. 40, page 667, there is a report of a leading case on this subject, to-wit, White v. Kincade, 95 Kan. 466, 148 P. 607, 608, wherein it was said;

"A vendor of land, who induces one, who has contracted to purchase it, to expend labor and material in improving the land, cannot defeat the claims for a lien of those who contribute their labor and material to enhance the value of his property."

In quoting from Henderson v. Connelly, 123 Ill. 98, 14 N. E. 1, 5 Am. St. Rep. 490, the court in White v. Kincade further said;

"A purchaser of land was authorized by the vendor to contract for an improvement on the land sold, and it was held that the workmen who made the improvement were not limited to a lien upon the interest

of the purchaser but that the interest of the owner was also subject to a lien." (Citing Phillips on Mechanics' Liens, 3rd Ed., Sec. 69.)

We concur in the Chancellor's findings of fact and conclusions of law, hence, the assignments of error are overruled and the judgment of the Chancellor affirmed.

The cause will be remanded to the Chancery Court at Murfreesboro for such further proceedings as may be necessary in conformity with this opinion.

Affirmed and remanded.

Felts and Hickerson, JJ., concur.