BENEFICIAL FINANCE COMPANY, Appellant (One of Defendants Below),

v.

WEGMILLER BENDER LUMBER COMPANY, INC., Appellee (Plaintiff Below),

and

John L. Myers, Cheryl A. Myers, Brown County Federal Savings and Loan Association, and Treasurer of Brown County, Appellees (Defendants Below).

No. 1–579A150.

Court of Appeals of Indiana, Fourth District.

March 27, 1980.

Rehearing Denied May 13, 1980. See 403 N.E.2d 1150.

---

James A. Knauer, James G. Lauck, Kroger, Gardis & Regas, Indianapolis, for appellant.

Gary J. Clendening and Thomas Bunger, Bloomington, for appellee.

CHIPMAN, Judge.

This action was brought by Wegmiller Bender Lumber Company, Inc. (Wegmiller), appellee, against John and Cheryl Myers, to foreclose upon a mechanics' lien. Defendants Beneficial Finance Company (Beneficial) and Brown County Federal Savings and Loan Association (Savings and Loan) claimed mortgage interests in the subject real estate and were included as party defendants. By way of cross-complaints, both Beneficial and Savings and Loan requested foreclosure of their respective mortgage liens. The trial court granted the foreclosure and ordered the proceeds generated from the sale of the real estate be applied to satisfy the claims of Wegmiller, Savings and Loan, and Beneficial, in that order of priority. Beneficial appeals from the decision of the trial court, raising the following issues for our review:

1) whether the trial court erred by finding Wegmiller's mechanics' lien to be valid despite the fact the statutory notice filed by Wegmiller named only one spouse as "owner" of property actually held by both husband and wife as tenants by the entireties, and

2) whether the trial court erred in granting Wegmiller's mechanics' lien priority over the mortgage liens of Beneficial and Savings and Loan.

Affirmed.

On April 11, 1976, John L. Myers, acting on his own behalf and as an agent for his wife, Cheryl Myers, executed a credit application authorizing Residential Design and Construction, Charles Steele, and Tom Grissom to purchase materials from Wegmiller for use in the construction of a home upon real estate owned by John and Cheryl Myers as tenants by the entireties. Wegmiller delivered materials for use in the construction of the residence from April 21, 1976 through September 25, 1976. The Myers' general contractor, Charles Steele, performed labor and supplied materials for the construction from April 21, 1976, through October 8, 1976. The total amount due to Wegmiller from the Myers for materials furnished was $21,337.54. On October 6, 1976, Wegmiller filed a Notice of Intention to Hold Mechanics' Lien in the office of the Recorder of Brown County.

On May 7, 1976, the Myers borrowed $45,000 from Savings and Loan and in consideration thereof executed a promissory note secured by a real estate mortgage upon the subject real estate, the latter of which was duly recorded on May 10, 1976. The Myers later defaulted on their note and then owed to Savings and Loan the sum of $44,950.81.

During the summer months of 1976, the Myers found it necessary to secure additional financing to complete the construction of the residence. On September 27, 1976, the Myers executed a promissory note and became indebted to Beneficial in the amount of $45,120.[1] In consideration for the loan, the Myers executed a mortgage upon the real estate which was duly recorded on October 4, 1976. The Myers caused a portion of their Beneficial loan, specifically $9,000 to be issued directly to Charles Steele in payment for labor rendered during construction. The remaining portion of the Beneficial loan was apparently used to pay other construction costs. The Myers de-

---

1. The actual amount loaned was approximately $20,000 but interest was added to this amount for ten years making a total of $45,120 payable in 120 monthly installments.

faulted on the note and they then owed Beneficial $13,867.42.

As a result of the default by the Myers on their obligations to Wegmiller, Savings and Loan, and Beneficial, this lawsuit was commenced on November 16, 1976 and all three creditors requested money judgments and foreclosure of their respective liens. After numerous continuances and trial settings the parties entered into stipulations of fact and no other evidence was presented. On September 15, 1978, the trial court held arguments on issues of law and a default judgment was entered against the Myers. By agreement of the parties, the real estate was sold and the proceeds, amounting to $65,000, were placed in escrow pending final judgment on the issues. On December 29, 1978, the trial court issued findings of fact and conclusions of law, ordering foreclosure of the mechanics' and mortgage liens. The money from the sale of the real estate was ordered to be applied in the following manner:

[D]istribution of the proceeds shall be made in the following order and amounts:

a. The defendant Brown County Federal Savings and Loan Association the sum of $818.32.[2]

b. The plaintiff, Wegmiller Bender Lumber Company, Inc. the sum of Twenty One Thousand Three Hundred Thirty Seven and 54/100 dollars ($21,337.54) plus interest in the amount of Seven Thousand Six Hundred Eighty One and 51/100 dollars ($7,681.51) plus attorney's fees in the amount of Five Thousand Eight Hundred Three and 03/100 dollars ($5,803.03).

c. Brown County Federal Savings and Loan Association the sum of Forty Four Thousand Nine Hundred Fifty and 81/100 dollars ($44,950.81) plus interest in the amount of Six Thousand Nine Hundred Thirteen and 86/100 dollars ($6,913.86) plus attorney's fees in the amount of Five Thousand dollars ($5,000.00).

d. Beneficial Finance Company the sum of Thirteen Thousand Eight Hundred Sixty Seven and 42/100 dollars ($13,867.42) plus attorney's fees in the amount of Two Thousand Five Hundred dollars ($2,500.00).

## I. Validity of Wegmiller's Mechanics' Lien

Beneficial first argues the lower court erred in finding Wegmiller's mechanics' lien to be valid despite the fact the Notice of Intention to Hold Mechanic's Lien filed by Wegmiller named only John Myers as owner of the encumbered real estate. In support of this contention, Beneficial cites *Ind. Code* 32–8–3–3, which provides in pertinent part:

Any person who wishes to acquire a lien . . . shall file in the recorder's office of the county, at any time within sixty [60] days after performing such labor . . . a sworn statement in duplicate of his intention to hold a lien upon such property for the amount of his claim, specifically setting forth the amount claimed, the name and address of the claimant *and the named of the owner . . .. The name of the owner and legal description . . . will be sufficient if they are substantially as set forth in the latest entry in the county auditor's transfer books . . ..* [emphasis added]

There is no question that the names of both John and Cheryl Myers were set forth in the Brown County Auditor's transfer books at the time Wegmiller filed its statutory notice. Because Wegmiller failed to strictly comply with the notice requirements by naming only one owner of the property, Beneficial argues Wegmiller failed to properly perfect, and therefore no valid mechanics' lien ever attached to the property. We hold Wegmiller substantially complied with the filing and notice requirements of IC 32–8–3–3.

Our resolution of this issue necessarily depends upon the manner in which we con-

---

2. The $818.32 figure represents expenditures made by Brown County Federal Savings and Loan Association to preserve the real estate.

strue the applicable provisions of our mechanics' lien law. Generally, it appears that courts in other jurisdictions take one of three views on the subject. Some courts have stated because the rights derived from the mechanics' lien statute are in derogation of the common law, the entire statute must be strictly construed in favor of the landowner.[3] This view has received support in Indiana. *See, e. g. Valley View Development Corp. v. Cheugh and Schlegel of Dayton, Inc.*, (1972) 151 Ind.App. 450, 280 N.E.2d 319; *Aetna Glass Corp. v. Mercury Builders Inc.*, (1969) 145 Ind.App. 286, 250 N.E.2d 598. Other courts have taken the position that while the mechanics' lien statute may be in derogation of the common law, it should be strictly construed only as to its scope, that is, only as to a determination whether the claimant is in the class of persons intended to be protected by the legislation. Once it is determined the claimant is within the scope of the statute, the remedial provisions of the legislation, e. g., provisions governing perfection and enforcement of the lien, should be liberally construed so that the purpose of the statute may be accomplished.[4] This view has also received support in Indiana. *See, e. g., Hough v. Zehrner*, (1973) 158 Ind.App. 409, 302 N.E.2d 881; *West v. Dreher*, (1920) 73 Ind.App. 133, 126 N.E. 688; *Cline v. Indianapolis Mortar and Fuel Co.*, (1917) 65 Ind. App. 383, 117 N.E. 509; *Rader v. A. J. Barrett Co.*, (1914) 59 Ind.App. 27, 108 N.E. 883. Still other courts apparently make no distinction between the various provisions of their mechanics' lien statute. They view the entire piece of legislation as remedial in nature, and apply a liberal construction to all its provisions.[5]

Our Supreme Court enunciated the purpose of our mechanics' lien legislation in *Moore-Mansfield Construction Co. v. Indianapolis, New Castle & Toledo Railway Co.*, (1913) 179 Ind. 356, 372, 101 N.E. 296, 302:

> The mechanics' lien laws of America, in general, reveal the underlying motive of justice and equity in dedicating, primarily, buildings and the land on which they are erected to the payment of the labor and materials incorporated, and which have given to them an increased value. The purpose is to promote justice and honesty, and to prevent the inequity of an owner enjoying the fruits of the labor and material furnished by others, without recompense.

We reject the idea that our entire mechanics' lien statute must be strictly construed with such hypertechnicality so as to frustrate the remedial purpose of the legislation. The perfection and enforcement provisions of the statute should be fairly and reasonably construed and applied so as to afford materialmen and laborers the security intended upon substantial compliance with statutory requirements, keeping in mind the need to afford reasonable protection to the rights of other parties who may have acquired an interest in the property. Whether there has been substantial compliance by the lien claimant depends upon the degree of non-compliance with the letter of the statute, the policy which underlies the particular statutory provision in question, and the prejudice which may have resulted to either the owner of the property or other third parties who have an interest in the real estate. We find there was substantial compliance by Wegmiller in the present case.

3. *See, e. g., Fowler v. Roxboro Homes, Inc.*, (1959) 98 Ga.App. 829, 107 S.E.2d 285; *Provost v. Shirk*, (1906) 223 Ill. 468, 79 N.E. 178; *Lowrie & Webb Lumber Co. v. Ferguson*, (1945) 312 Mich. 331, 20 N.W.2d 209; *Belmont Coal & Lumber Co. v. James F. Wood Builders, Inc.*, (1940) 125 N.J.L. 315, 15 A.2d 625.

4. *See, e. g. Lambert v. Newman*, (1968) 245 Ark. 125, 431 S.W.2d 480; *City Lumber Co. v. Borsuk*, (1945) 131 Conn. 640, 41 A.2d 775; *Fidelity Storage Corp. v. Trussed Concrete*

*Steel Co.*, (1910) 35 App.D.C. 1, *Layrite Products Co. v. Lux*, (1964) 86 Idaho 477, 388 P.2d 105; *Builder's Lumber Co. v. Stuart*, (1959) 6 Wis.2d 356, 94 N.W.2d 630.

5. *See, e. g. Nolte v. Smith*, (1961) 189 Cal. App.2d 140, 11 Cal.Rptr. 261; *Johnson v. Starret*, (1914) 127 Minn. 138, 149 N.W. 6; *Rowland v. Lowe*, (1959) 46 Tenn.App. 60, 326 S.W.2d 681; *Howard v. Waale-Camplan & Tiberti, Inc.*, (1950) 67 Nev. 304, 217 P.2d 872.

The filing requirement of IC 32–8–3–3 serves two objectives. First, it is designed to provide the record title holder of the property with notice of the fact a mechanics' lien has been placed upon the real estate. The lien claimant is required to file his statutory notice in duplicate. One copy is then mailed by the recorder to the owner named in the claimant's notice, addressed to the latest address of such owner as shown on the property tax records of the county.[6] The statute does not provide for separate notices to be mailed to each of several co-owners of the property, for only one address will appear in the county's property tax records, and the recorder is required to send only one notice to that address. Therefore, the statutory scheme is designed to insure at least one of the record title holders of the property will be mailed a copy of the lien claimant's notice. This objective was satisfied in the present case when Wegmiller named John Myers as owner of the property and a copy of Wegmiller's notice was subsequently forwarded by the recorder's office to the Myers residence. Obviously, the better practice for lien claimants is to include the names of all owners in the notice so that each name will appear on the envelope mailed by the recorder and the notice enclosed. However, absent a showing by Cheryl Myers that she was somehow prejudiced by Wegmiller's failure to include her name in the notice filed with the recorder, the lien will not be defeated.

IC 32–8–3–3 is also designed to put third party purchasers and money lenders on notice of the fact the mechanics' lien has been placed upon the property. A search of the public record should be sufficient to put a third party on notice that the real estate in question is encumbered and that further inquiry should be made. In the present case, John and Cheryl Myers held the property as tenants by the entireties. With this fact in mind, any third party searching the record would have found the notice filed by Wegmiller naming John Myers as owner and including a proper description of the real estate in question. In short, where property is held by husband and wife as tenants by the entireties, we fail to see how any third party could claim to have been misled or prejudiced by the fact a mechanics' lien claimant included the name of only one spouse as "owner" of the property in a statutory notice. Obviously, Beneficial does not claim to have been misled in this case.

Wegmiller's Notice of Intention to Hold Mechanics' Lien fully complied in all other respects with the filing requirements of IC 32–8–3–3. The notice was timely filed and contained the name and address of the claimant, the amount of the claim, and an accurate description of the real estate. Therefore, we hold that under the circumstances of this case, Wegmiller substantially complied with the requirements of IC 32–8–3–3 and a valid mechanics' lien did attach to the property.

## II. Priority of Lien Claimants

Beneficial next argues that even if a valid mechanics' lien existed in favor of Wegmiller, the trial court erred by granting the mechanics' lien priority over Beneficial's mortgage lien. Beneficial contends it is entitled to parity to the extent mortgage money it loaned was used to pay materialmen and laborers who could otherwise have filed mechanics' liens against the property. We hold the trial court correctly granted priority to Wegmiller's mechanics' lien.

Generally, a mechanics' lien will relate back in time to when materials or labor are initially furnished for construction, and will have priority over all liens subsequently created. This rule of priority is found in *Ind.Code* 32–8–3–5, which provides:

[A]ll liens so created shall relate to the time when the mechanic or other person

---

6. The remaining portion of *Ind.Code* 32–8–3–3 provides, in part:

The recorder shall mail first class one [1] of the duplicates to the owner named in such notice within three [3] business days after recordation and post his records as to the date of this action. *Such notice shall be addressed to the latest address of such owner as shown on the property tax records of the county.* (emphasis added)

began to perform the labor or furnish the materials or machinery, and shall have priority over all liens suffered or created thereafter, except the liens of other mechanics and materialmen, as to which there shall be no priority.

However, an exception to this general rule of priority was announced by our Supreme Court in the early case of *Ward v. Yarnelle*, (1910) 173 Ind. 535, 91 N.E. 7, when the court took notice of resulting equities and held a real estate mortgage executed while a building was in the process of construction was entitled to equal priority with the claims of materialmen and laborers who, without prior obligation, furnished materials and labor after execution of the mortgage and with full knowledge of its purpose and effect.

In *Ward, supra*, the construction of a theater had progressed to the point where the structure was about ready for a roof, when on December 15, 1905, the owner of the property executed a mortgage in favor of the Dollar Savings Bank & Trust Company. The mortgage instrument provided that it was executed to enable the owner to "pay for improvements now in the course of erection and completion on its real estate, and to further construct, extend, and better the equipment, and improvement, . . . and to pay outstanding obligations." 91 N.E. at 15. Materialmen and laborers thereafter continued to furnish material and labor for construction of the theater. The court held the construction mortgage had equal priority with the claims for material and labor furnished after its execution:

In some states it has been held that where the mortgage is given for the purpose of constructing a building, and the money is so used, the mortgage has priority both as to the land and building. *Kiene v. Hodge*, 90 Iowa 212, 57 N.W.

717; *Wroten v. Armat*, 31 Grat. (Va.) 228. That, however, is a different proposition from the taking of a mortgage during the process of erection, and the element of notice of the objects of the mortgage, either by the mortgage itself, or in some other way, is important and controlling, so that the materialman or laborer shall be fully advised in advance  .  .  . . .

\* \* \* \* \* \*

Here was notice to the materialman and laborer that the proceeds of the mortgage were to be applied to the same class of claims as their own, if they furnished the necessaries of completing the building, and they are bound to take notice of the equity thus created; and the mortgagee was bound to take notice of the equities which would arise from the fact of the employing of labor and material to complete the building and enhance its security.

91 N.E. at 16. The Supreme Court reasoned the mechanics' lien claimants were in no worse a position than they would have been if no mortgage had been given and the claims of those who had been paid from the mortgage fund had filed their own mechanics' liens against the real estate.

■ The doctrine of parity announced in *Ward, supra*, is a doctrine based upon equitable principles. Of primary significance was the fact the mechanics' lien claimants furnished materials and labor with notice of the construction mortgage and its purpose. Indeed, the court found the parties to have been engaged in somewhat of a "common enterprise":

They all engaged in a common enterprise, and none of them are in a situation to claim priorit[ies]; their equities are equal.

91 N.E. at 15.[7] In the present case, however, Wegmiller was not on notice of Bene-

7. In *McLaughlin Mill Supply Co. v. Laundry Service*, (1933) 95 Ind.App. 693, 184 N.E. 429, the court quoted extensively from *Ward, supra*, and again emphasized the element of notice:

While the mortgage in the case now before us does not disclose the purpose of the loan, the evidence does disclose its purpose, and that the money loaned  .  .  . was used in

payment for labor, equipment, and material furnished for the construction of said building. It further discloses that at least part of the appellants, and other parties asserting mechanics' liens but not appealing, had notice of the purpose of the loan obtained and of the expenditure of the money secured in

ficial's loan at the time materials were furnished for construction. In fact, the parties stipulated Wegmiller furnished materials from April 21, 1976 through September 25, 1976; Beneficial's mortgage was not executed until September 27, 1976, and not recorded until October 4, 1976. Wegmiller cannot in any way be charged with notice of the resulting equities as were mechanics' lien claimants in *Ward, supra.* Therefore, we hold Beneficial has not demonstrated it is entitled to the extraordinary equitable relief announced in that case.

The judgment of the trial court is therefore affirmed in its entirety.

MILLER, P. J., concurs.

YOUNG, J., dissents with opinion.

YOUNG, Judge, dissenting.

The precise issue is whether a mechanic's lien, to secure the joint debt of a husband and wife, can be valid where the statutory notice named only one spouse as the owner of property held by the husband and wife, as tenants by the entireties. I disagree with the holding that Wegmiller adequately complied with the statutory requirements IC 1976, 32–8–3–3 (West 1979). Therefore, I dissent and would hold that the trial court erred in finding the lien valid. The statute and facts are set forth in the majority opinion and will be incorporated only as required by this discussion.

The majority opinion summarizes three views on construction of mechanics' lien statutes and adopts a substantial compliance construction.[1] I believe strict compliance with the creation and perfection portions of the statute is required. Once the requirements of the statute are met, the remedies under the lien statutes naturally

follow. This is consistent with the case law discussing compliance with the mechanics' lien statutes in this state.

In *Saint Joseph's College v. Morrison's Inc.*, (1973) 158 Ind.App. 272, 302 N.E.2d 865 at 869 the Court of Appeals recognized that the lien statutes were remedial in nature and are "liberally construed *only* insofar as determining the remedies available to one *who has already satisfied the strict provisions of the law.*" (Our emphasis.) The statute requires strict compliance in order to determine whether the mechanic qualified himself under the statute to receive the remedies available. More recent cases discussing the perfection of a lien under the statute require the meeting of *all* statutory requirements in order for the lien to be valid. *Mid America Homes, Inc. v. Horn*, (1979) Ind., 396 N.E.2d 879, 881 (compliance with notice provisions of IC 1976, 32–8–3–1 (West 1979)); *Stanray Corp. v. Horizon Construction, Inc.*, (1976) Ind.App., 342 N.E.2d 645 (sixty day limit on filing notice); *Van Wells v. Stanray Corp.*, (1976) Ind. App., 341 N.E.2d 198. *See also* Practice Commentary, *Grayson, J., Mechanics' and Materialmen's Liens*, IC 32–8–3 (West 1979) 8, 11. I disagree with the majority holding that perfection of the lien is within the remedial division of the statute. The manner in which the lien is perfected gives rise to its existence and the priority of the claimant over other secured or nonsecured creditors. There is nothing "hypertechnical" in this matter. The statute requires that any person seeking to come within its terms must in their notice *specifically* set forth, *inter alia*: 1) the name and address of the claimant; 2) the amount claimed; and 3) the name of the owner.[2] There is

---

discharge of debts incurred in the erection of the building . . . .
184 N.E. at 433.

1. Maj.Op. 44, 45. While the statute might be considered ambiguous and in need of construction in *some* particulars, I do not believe the requirement that the owner be named is unclear and in need of construction. This district has recently reviewed some of the rules of statutory construction in *Johnson v. Wabash County*, (1979) Ind.App., 391 N.E.2d 1139,

1143. The fundamental rule stated here is that "a statute clear and unambiguous on its face need not and cannot be interpreted by a court, . . . and, in the absence of an expressed differing legislative intent, words in statutes are given their plain, ordinary meaning."

2. The claimant is given the option of using the Auditor's transfer records if he chooses as a source of information. Those may or may not include all persons' names who have an interest in the property. The statutory directive

nothing difficult in complying with the perfection portion of this statute.

The purpose of notice under IC 32–8–3–3, is to "alert prospective purchasers, lenders, tenants, etc. who may otherwise deal with such owner, without requiring the consideration to be applied first to the discharge of the claimed liens." It comes at a time when it is unlikely to benefit the owner. *Mid America Homes, Inc. v. Horn*, 396 N.E.2d at 882. In an instrument to be placed of record, the name should be exactly as that by which title was acquired. This is the name that appears on the transfer books of the auditor, too. *See* n. 2.

A third party examining the record might well be misled by the failure to name both of the tenants by the entireties. That third party might well think that no lien attached to the property because of the inadequacy

of the notice or that the claim may represent a separate debt of the husband. The person seeking to establish such a lien must identify the interest in property sought to be made subject to the lien and since one spouse has no separate interest in property held by the entireties both must be named. *See generally Mid America, supra* at 882.

In any event, it is not within the duty of this court to lessen (which is what I believe the majority opinion does) the requirements for creation of a lien. There are many methods by which a statute could be construed, some of which are discussed in the majority opinion. I believe that had the General Assembly indicated that one of two owners would be sufficient they could have prefaced the word "owner" with the word "an" instead of the word "the." [3]

that compliance with the notice provision may be achieved by utilizing the records in the Auditor's Office is but an example of the means in which the notice could be prepared. In its directive, it is permissive, but not exclusive, and would not excuse a lack of specificity otherwise required. The notice also must include the legal description of the property which can only be accurately stated by examination of the owners' deed.

The transfer records of the Auditor's Office are compiled from deeds which are submitted for transfer. IC 1976, 6–1.1–5–4 (Burns Supp. 1979) ("[T]he county auditor shall keep a transfer book, arranged by townships, cities, and towns. In the transfer book he shall enter a description, for the purpose of taxation, of land that is conveyed by deed or partition, the date of the conveyance, the names of the parties, and the post office address of the grantee. . . .") The names of the grantees are inserted on the record and the name of the grantors struck out. The legal description remains. In instances of metes and bounds description, the amount of acreage is usually shown and not the entire description. Utilization of this record to prepare notice is a shortcut to the legal description but should not be construed to authorize a similar shortcut to names of the owner.

"Substantial" as used in the sentence of the statute concerning the Auditor's transfer books does not refer to compliance with the strict requirements of the statute, but refers to trivial errors of spelling (reflecting the doctrine of *idem sonans* ), misdescription (*Coburn v. Stephens*, (1894) 137 Ind. 683, 36 N.E. 132), business status of parties (*Kendall Lumber & Coal Co. v. Roman*, (1950) 120 Ind.App. 368, 91 N.E.2d 187; *Waverly Co. v. Moran Electric*

*Service, Inc.*, (1940) 108 Ind.App. 75, 26 N.E.2d 55).

**3.** For example, it authorizes "any person" who wishes to acquire such a lien. It does not say "person" or "persons." Any number of persons who wish to come within its terms may do so.

Common usage in the English language does not scrupulously observe a discrete difference between singular and plural word forms, especially when speaking in the abstract, not referring to identified subjects or objects, as in legislation prescribing a general rule for future application. In recognition of this, it is well established, by statute as well as by judicial decision, that legislative terms which are singular in form may apply to multiple subjects or objects and those which are plural in form may apply to single subjects or objects if that is the intended or reasonably understood meaning and effect.

Many systems of statute law contain general interpretation clauses adopting the rules stated above. For example, the opening section of the United States Code declares that "[i]n determining the meaning of any act or resolution of Congress, words importing the singular number may extend and be applied to several persons or things; (and) words importing the plural number may include the singular; . . . ." By comparison, Florida statutes pronounce, more succinctly, that "[t]he singular includes the plural and vice versa." Regardless of their particular form, however, such statutory expressions are to be understood as legislative recitals of a general principle of interpretation, for there are decisions which do not rely on statutory di-

Again, I do not believe this portion of the statute is in need of construction. For these reasons, I would hold that the lien was invalid.

rectives to enlarge the coverage of singular
terms and to apply plural terms to single
objects or subjects.

*Sutherland, Statutes and Statutory Construction* § 47.34 (Sands 4th ed. (1973)) (notes omitted.)