ATTORNEYS FOR APPELLANT
Peter J. Rusthoven
John R. Maley
Barnes & Thornburg LLP
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE
IN SUPPORT OF APPELLANT
Gregory F. Zoeller
Attorney General of Indiana

Thomas M. Fisher
Solicitor General

Heather Hagan McVeigh
Deputy Attorney General

Ashley Tatman Harwel
Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Andrew W. Hull
Daniel K. Burke
Hoover Hull LLP
Indianapolis, Indiana

Jay P. Lefkowitz
Kirkland & Ellis LLP
New York, New York

Michael D. Shumsky
Kirkland & Ellis LLP
Washington, DC

FILED
Mar 21 2012, 9:07 am

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

---

No. 49S00-1201-PL-15

STATE OF INDIANA,

*Appellant,*

v.

INTERNATIONAL BUSINESS
MACHINES CORPORATION,

*Appellee.*

---

Appeal from the Marion Superior Court, No. 49D10-1005-PL-021451
The Honorable David J. Dreyer, Judge

---

Civil Transfer of Appeal of Interlocutory Order

---

**March 21, 2012**

**Rucker, Justice.**

In this case we consider whether Indiana Code section 34-29-2-1 – providing that the governor of the State of Indiana is "privileged from arrest on civil process, and from obeying any subpoena to testify" – operates to preclude a trial court from issuing an order to compel the Governor's deposition in a contract dispute brought by the State of Indiana against a contractor. We hold that it does.

**Facts and Procedural History**

On December 27, 2006, the State of Indiana on behalf of its agency the Indiana Family and Social Services Administration entered into a contract with International Business Machines Corporation ("IBM") to modernize and improve the State's welfare system. Appellant's App. at 933. Mitchell E. Daniels, Jr. was Governor of Indiana at the time the State entered into the contract and continues in that office today. The Governor, along with several other State officials, signed the document and made several public statements concerning the same. Appellant's App. at 933, 586, 609, 612. On October 15, 2009, the State notified IBM that it was terminating the contract. Appellant's App. at 729. On May 13, 2010, the State filed suit against IBM in the Marion County Superior Court asserting breach of contract among other claims. IBM filed a separate suit against the State, and its claims were consolidated with the State's originally-filed complaint. See, e.g., Appellant's App. at 3, 5, 6.

Although the record is not clear concerning the precise date, at some point IBM served notice on the Governor to take his testimonial deposition. See Ind. Trial Rule 30(A). On March 18, 2011, the State moved for a protective order pursuant to Indiana Trial Rule 26(C). The State asserted that any deposition of the Governor was prohibited based on the Governor's unqualified "privilege[ ] from arrest on civil process, and from obeying any subpoena to testify," Ind. Code § 34-29-2-1(6),[1] and alternatively, that IBM could not overcome the high bar imposed under the common law prohibiting testimony of upper-level executive branch government officials. See Appellant's App. at 303, 306. The trial court issued a "Protective Order Precluding Deposition of Governor at This Time," reasoning: "On one hand, the statute above [Indiana Code section 34-29-2-1] clearly precludes a deposition of a sitting governor. On the other hand, an exception

---

[1] This provision of the code was originally enacted in 1852 as Ind. Rev. Stat. ch. 5, section I.

might be established since it is reasonable to expect any chief executive to have unique personal first-hand knowledge or experience in the management of a project of such magnitude as this IBM contract." Appellant's App. at 430. The court held "[t]he current evidence does not allow the Court to determine whether the Governor may be deposed in this case under any purported exception to the statute." Appellant's App. at 430.

On September 6, 2011, after conducting over four months of additional discovery, IBM moved to compel the Governor's deposition. On December 15, 2011, the trial court issued an order granting IBM's motion with certain limitations designed to "prevent any undue burden" upon the Governor. Appellant's App. at 1463, 1465. In this order, the trial court found the language of Indiana Code section 34-29-2-1 ambiguous and interpreted the statute to ascertain the intent of the legislature. While recognizing that "[t]he underlying policy and goals of the Statute clearly include the protection of various public officials and private individuals during official duties or significant public responsibilities," the court concluded that its application in this "unprecedented case" would be "unfair to the public" – which could not have been the General Assembly's intent. Appellant's App. at 1465. On the State's motion, the trial court certified its order for interlocutory appeal pursuant to Indiana Appellate Rule 14(B). The State sought emergency transfer to this Court, which we granted. See Ind. Appellate Rule 56(A).

**Standard of Review**

In general, we review a challenge to a trial court's discovery order for abuse of discretion. See Terre Haute Reg'l Hosp., Inc. v. Trueblood, 600 N.E.2d 1358, 1362 (Ind. 1992). However, we review questions of law de novo, Porter Dev., LLC v. First Nat'l Bank of Valparaiso, 866 N.E.2d 775, 778 (Ind. 2007), and the interpretation of a statute is a question of law. Tyler v. State, 903 N.E.2d 463, 467-68 n.4 (Ind. 2009). "[A]ppellate courts need not defer to a trial court's interpretation of [a] statute's meaning." Elmer Buchta Trucking, Inc. v. Stanley, 744 N.E.2d 939, 942 (Ind. 2001). We therefore "independently review the statute's meaning and apply it to the facts of the case under review." Id. In sum, because a question of statutory interpretation constitutes a question of law, we review it de novo.

3

**Discussion**

In interpreting a statute, our goal is to determine and give effect to the intent of the legislature. Porter Dev., 866 N.E.2d at 778. In determining legislative intent, we "consider the objects and purposes of the statute as well as the effects and repercussions of" our interpretation. Bushong v. Williamson, 790 N.E.2d 467, 471 (Ind. 2003). "The legislative intent as ascertained from the provision as a whole prevails over the strict literal meaning of any word or term." Id. These precepts have guided us in statutory interpretation for over a century. See, e.g., Parvin v. Wimberg, 30 N.E. 790, 793 (Ind. 1892) (noting that when legislative intent is ascertained, "it will prevail over the literal import and the strict letter of the statute"). And where meaning is uncertain, "the courts will look also to the situation and circumstances under which [the statute] was enacted, to other statutes, if there are any upon the same subject, whether passed before or after the statute under consideration, whether in force or not, as well as to the history of the country, and will carefully consider in this connection the purpose sought to be accomplished." Id. Cf. D & M Healthcare, Inc. v. Kernan, 800 N.E.2d 898, 911 (Ind. 2003) (rejecting literal construction of Indiana Constitutional provision in light of history of the provision and subsequent practice).

At the outset, we note that in Indiana "privileges are statutory in nature and it is within the General Assembly's power to create them." In re Subpoena to Crisis Connection, Inc., 949 N.E.2d 789, 793 (Ind. 2011). A grant of privilege and the scope of that privilege are policy choices of the Legislature. And provided the result is constitutional, choices of policy are solely within the purview of the Legislature. See Shook Heavy & Envtl. Constr. Grp. v. City of Kokomo, 632 N.E.2d 355, 359 (Ind. 1994).[2] By creating a statutory privilege, the Legislature has determined that a particular interest is important enough to justify the privilege in the prescribed scope. See Crisis Connection, 949 N.E.2d at 793.

In this case, the statute provides a governor an absolute privilege to be free from "arrest on civil process, and from obeying any subpoena to testify." I.C. § 34-29-2-1(6). In contrast to other subsections of the statute, which place clear limits on the privilege given to other persons, subsection (6) includes no such limitations. Compare, e.g., I.C. § 34-29-2-1(1) (privileging

---

[2] IBM asserts no claim that the statute at issue here is unconstitutional.

legislators "from arrest on civil process, and from obeying any subpoena to testify" "during their attendance[] at" and while "going to[] and returning from" a meeting of the General Assembly); I.C. § 34-29-2-1(2) (granting the same privilege to voters "during attendance at, going to, and returning from elections"); I.C. § 34-29-2-1(7) (similarly privileging "[a]ll persons while actually engaged in the discharge of military duty"), with I.C. § 34-29-2-1(6) (granting the same privilege to "[t]he governor, treasurer of state, secretary of state, auditor of state, and superintendent of public instruction" with no qualifying language whatsoever). In other words, the Governor's privilege under this statute, like the victim advocate privilege in Crisis Connection, admits of no exceptions. See 949 N.E.2d at 795.

Ultimately, the question in this case boils down to whether a trial court's order to compel the Governor's deposition amounts to a "subpoena" from which the Governor is privileged under Indiana Code section 34-29-2-1. The parties engage in a spirited and enlightening debate about the meaning of "subpoena" at the time of the statute's original enactment in 1852, as well as the interplay between the privilege statute and the Indiana Trial Rules. In essence, the State argues that at the time the statute was enacted, a subpoena was the only mechanism available to compel the attendance of witnesses, and therefore the Legislature intended to grant the governor a privilege against all possible mechanisms of compulsion, which would today include a trial court's order to compel a deposition. IBM responds that in 1852, Indiana statutes also provided that a witness could be compelled to testify upon "notice" of a party. See 2 Ind. Rev. Stat. pt. 2, ch. 1, art. 14, § 266; art. 15, § 296. And here notice was served on the Governor to appear for a testimonial deposition. According to IBM because the privilege statute contains no privilege against "notice," the Legislature did not intend to grant the governor a privilege against compulsion through means other than subpoena. IBM also argues that even if the 1852 Legislature did intend to immunize a governor against non-subpoena means of compulsion, the subsequent re-adoption of this statute after the promulgation of the Indiana Trial Rules evinces the Legislature's intent to modify the meaning of the statute in light of the Trial Rules.

We have a slightly different view. The 1852 Act provided that "[t]he attendance of all witnesses when duly summoned . . . may be enforced by attachment." 2 Ind. Rev. Stat. pt. 2, ch. 1, art. 13, § 234. Both party and non-party witnesses could be compelled to testify "in the same manner." 2 Ind. Rev. Stat. pt. 2, ch. 1, art. 15, § 295. Although the statutory scheme provided

that "notice" was to be given to a party when the adverse party deposed both party and non-party witnesses, see 2 Ind. Rev. Stat. pt. 2, ch. 1, art. 14, § 266; art. 15, § 296, "notice" was not the means of compelling testimony in 1852, nor is it today. Then, as now, compulsion was accomplished by a court order – whether called a subpoena, an "order to compel," or something else. That the trial court's order to compel the Governor's deposition in this case arose from the Governor's failure to respond to IBM's "notice" of deposition is therefore of no moment. The reference to "subpoena" in Indiana Code section 34-29-2-1 encompasses the order at issue here. We thus agree with the trial court's original declaration that the statute "clearly precludes a deposition of a sitting governor." Appellant's App. at 430.

To hold otherwise would be to elevate a strict literal meaning of the word "subpoena" over clear Legislative intent to provide a gubernatorial privilege against compelled testimony. Surely the Legislature did not mean that any court command, provided it was not denominated "subpoena," would suffice to evade the statutory privilege. IBM argues that a subpoena is unique in that it may be enforced by a contempt order – that is, by physical detention of the person subject to the subpoena – whereas an order of the kind at issue here cannot be enforced by a contempt finding. And IBM contends that the Legislature intended only to protect a governor from physical detention. We disagree with this reasoning. First, the policy behind executive privilege extends beyond protection from detention to encompass protection from all manner of interference with one's official duties – ranging from interferences with one's time to interferences with the deliberative process. See, e.g., Stagman v. Ryan, 176 F.3d 986, 994-95 (7th Cir. 1999) (recognizing that the deposition of a high ranking state official would disrupt his schedule); 1 McCormick on Evidence § 108, at 483 (Kenneth S. Brown, ed., 6th ed. 2006) (recognizing that protecting officials' deliberative processes enhances the quality of governmental decision-making). Second, under our Trial Rules, "notice" of a deposition is all that is necessary for a court clerk to issue a subpoena to a witness. See Ind. Trial Rule 45(D). "Notice" of a deposition under the Trial Rules therefore provides all that is necessary for a subpoena to issue. For purposes of the privilege statute, "notice" and "subpoena" accomplish essentially the same goals – and thus would be privileged in essentially the same manner. A literal reading of "subpoena" in the statute would, under IBM's reasoning, force the Governor (and others protected under the statute) to give a deposition upon "notice" of a party or upon

some other court instruction – provided no subpoena was issued as is clearly permitted by Trial Rule 45(D). Such a literal understanding of the statute would produce an absurd result.

The existence of the Governor's privilege does not, however, preclude the trial court from ensuring that the interests of justice are served in this litigation. Indeed, "[t]rial courts have the right and duty to manage proceedings before them to insure both expedition and fairness, and must be granted a wide discretion in carrying out that duty." Glaros v. H.H. Robertson Co., 757 F.2d 1564, 1573 (Fed. Cir. 1986). This could include, among other things, limitations on the introduction of certain evidence. In fact, even where privileges as important as the Fifth Amendment privilege against self-incrimination are implicated, courts in civil proceedings have taken steps to ensure that the litigation proceeds in a manner consistent with the interests of justice. See, e.g., Baxter v. Palmigiano, 425 U.S. 308, 318 (1976) (recognizing that "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence against them"); Wansong v. Wansong, 478 N.E.2d 1270, 1272 (Mass. 1985) (affirming restriction of plaintiff's use of certain evidence in divorce case where he invoked his privilege against self-incrimination).

Citing the Governor's extensive involvement in the formation, implementation, and ultimately the termination of the contract, IBM makes an intricate argument explaining why the Governor's deposition is necessary. However, the privilege afforded by Indiana Code section 34-29-2-1(6) is absolute. And although it may be expressly waived, once invoked any party protected by the privilege simply may not be compelled to give testimony. The Governor's involvement may or may not be relevant to the questions raised in this litigation. If relevant, the trial court will determine the appropriate remedial measures to ensure that the interests of justice are served.

### Conclusion

We reverse the order of the trial court.


Shepard, C.J., and Dickson and David, JJ., concur.
Sullivan, J., concurs in result with separate opinion.

**Sullivan, Justice, concurring in result.**

I would refrain from holding that any privilege is "absolute." All privileges are subject to waiver by voluntary disclosure, see Ind. Evidence Rule 501(b), and when used offensively rather than defensively – as a "sword rather than a shield," Harney v. Owen, 4 Blackf. 337, 338 (Ind. 1837) (quoting Badger v. Phinney, 15 Mass. 359, 363 (1819)). And, of course, privileges are subject to constitutional limitations. See State v. Fromme (In re Subpoena to Crisis Connection, Inc.), 949 N.E.2d 789, 795 (Ind. 2011).

In this case, I do not think it is necessary to rule on the privilege issue at all because the information IBM seeks is not relevant or material to any issue in the case. See Ind. Trial Rule 26(B) (discovery limited to matters "relevant to the subject-matter involved in the pending action"). Here the State seeks damages from IBM alleging breach of contract and that IBM provided false information to procure the contract; IBM seeks fees it claims the State owes under the contract and reimbursement for equipment it claims that the State improperly has retained. IBM says that "the Governor's statements regarding his assessment of IBM's performance bear directly on the merits of the State's claim of breach and demand for damages, and the State's other claims directly put the Governor's state of mind at issue." Appellee's Resp. Br. 9. This is not correct. Neither the Governor's "assessment of IBM's performance" nor his "state of mind" bear in any way on whether or not IBM breached the contract or the State owes IBM fees or reimbursement. See Vernon Fire & Cas. Ins. Co. v. Sharp, 264 Ind. 599, 607-08, 349 N.E.2d 173, 180 (1976) ("[A] promisor's motive for breaching his contract is generally regarded as irrelevant because the promissee will be compensated for all damages proximately resulting from the promisor's breach." (citations omitted)). To the extent that the Governor has information that might be relevant to whether or not IBM provided false information to the State, he is certainly not a unique witness in that regard – there was a competitive procurement for this contract where all of the information IBM provided would have been in the bid documents. See State v. Cline (In re WTHR-TV), 693 N.E.2d 1, 7 (Ind. 1998) (materiality of evidence "embraces also an evaluation of not only theoretical relevance, but also the availability of the information from other sources").

Because Governor Daniels's testimony is not relevant or material to any issue in this case, I concur in the result of the Court's opinion.