
FILED
Sep 13 2013, 5:20 am

CLERK
of the supreme court,
court of appeals and
tax court

## FOR PUBLICATION

ATTORNEYS FOR APPELLANTS:

**BRIAN J. HURLEY**
**TIMOTHY C. KRSAK**
Douglas Koeppen & Hurley
Valparaiso, Indiana

ATTORNEY FOR APPELLEES:

**JOHN F. LAKE**
Lake & Lake
Michigan City, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

VON TOBEL CORPORATION, Individually, )
and d/b/a VON TOBEL LUMBER & )
HARDWARE; and VON TOBEL LUMBER & )
HOME CENTER, INC., )
                                     )
    Appellants-Plaintiffs, )
                                     )
        vs. )    No. 46A03-1301-MI-18
                                     )
CHI-TEC CONSTRUCTION & REMODELING, )
INC.; JOHN F. ZIOLA, JR.; and MARGARET )
LYNN WEST, as Trustee for the MARGARET )
LYNN WEST TRUST, )
                                     )
    Appellees-Defendants. )

APPEAL FROM THE LAPORTE SUPERIOR COURT
The Honorable Jennifer L. Koethe, Judge
Cause No. 46D03-0906-MI-298

**September 13, 2013**

**OPINION - FOR PUBLICATION**

**KIRSCH, Judge**

Von Tobel Corporation, Individually, and d/b/a Von Tobel Lumber & Hardware , and Von Tobel Lumber & Home Center, Inc. appeal the trial court's grant of summary judgment in favor of the Margaret Lynn West Trust ("the Trust"). The appellants contend that summary judgment in favor of the Trust was erroneous, and that the trial court should have granted the Plaintiffs' request for summary judgment.

We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

Margaret Lynn West is the Trustee of the Trust which owns a parcel of real estate on Lake Michigan. On November 21, 2006, the Trust entered into an agreement with Chi-Tec Construction & Remodeling, Inc. ("Chi-Tec"), owned by John F. Ziola, Jr. ("Ziola"), for the construction of a house on the property. Chi-Tec began building the house in December of 2006. Chi-Tec had previously entered into a credit agreement with Von Tobel Corporation, allowing Chi-Tec to make purchases from any of its wholly owned subsidiaries, including Von Tobel Home Center. During the construction process on the Trust property, Chi-Tec purchased goods and materials on credit from Von Tobel Home Center.

Pursuant to the credit agreement, Von Tobel Home Center made its first delivery on January 8, 2007. Nine days later, on January 17, 2007, Von Tobel Home Center took steps to secure rights to a mechanic's lien by tendering pre-lien notice ("Pre-lien Notice") to the Trust and recording that notice in the Office of the Recorder of LaPorte County. The instrument identified Von Tobel Home Center, Inc. as lienholder. Von Tobel Corporation did not file a separate pre-lien notice. Thereafter, Von Tobel Home Center

2

continued to supply materials to Chi-Tec, and made its last delivery on June 16, 2008. All invoices bore the heading, "Von Tobel Lumber & Hardware." The Trust paid invoices directly to Chi-Tec, but Chi-Tec failed to pay the Plaintiffs the sums that it owed for materials. Von Tobel Corporation recorded notice of a mechanic's lien ("Lien Notice") against the property on July 15, 2008.

Von Tobel Corporation initiated a lawsuit on June 23, 2009, seeking foreclosure of its mechanic's lien as well as damages against Chi-Tec, Ziola, and the Trust. The Trust filed its Answer and Affirmative Defenses challenging the validity of Von Tobel Corporation's mechanic's lien. Ziola and Chi-Tec both filed for Chapter 7 Bankruptcy in June, 2012.

Von Tobel Corporation moved for summary judgment and the Trust filed its response and a cross motion for summary judgment. Following a hearing on both motions, the trial court entered summary judgment in favor of the Trust holding that Von Tobel Corporation's mechanic's lien was invalid because of "the designation of the wrong claimant on the pre-lien notice . . . ." *Appellants' App.* at 658-61. The Plaintiffs now appeal.

### DISCUSSION AND DECISION

Summary judgment is appropriate only if the pleadings and designated evidence show "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). Even if the facts are undisputed, summary judgment is not proper if those undisputed facts give rise to conflicting inferences that are material. *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d

1228, 1231 (Ind. 1994). The party seeking summary judgment must demonstrate the absence of any genuine issue of fact as to a determinative issue, and only then is the non-movant required to come forward with contrary evidence. *Jarboe v. Landmark Cmty. Newspapers of Ind., Inc.*, 644 N.E.2d 118, 123 (Ind. 1994). However, the party appealing from the grant of summary judgment has the burden of persuading the court that the grant of summary judgment was erroneous. *Winkler*, 638 N.E.2d at 1231.

> The statute governing Pre-lien Notice, in pertinent part, provides that:
>
> A person, firm, partnership, limited liability company, or corporation that sells or furnishes on credit material . . . for the original construction of a single or double family dwelling for the intended occupancy of the owner upon whose real estate the construction takes place to a contractor, subcontractor, mechanic, or anyone other than the owner or the owner's legal representatives must:
> (1) furnish the owner of the real estate . . . with a written notice of the delivery or labor and the existence of lien rights not later than sixty (60) days after the date of the first delivery or labor performed; and
> (2) file a copy of the written notice in the recorder's office of the county not later than sixty (60) days after the date of the first delivery or labor performed.
> The furnishing and filing of the notice is a condition precedent to the right of acquiring a lien upon the real estate or upon the improvement constructed on the real estate.

Ind. Code § 32-28-3-1(i). As this Pre-lien Notice statute indicates, filing of such notice "is a condition precedent to the right of acquiring a lien . . . ." *Id.* To acquire a lien, however, further steps must be taken, pursuant to the Lien Notice statute, which provides in pertinent part:

> The statement and notice of intention to hold a lien may be verified and filed on behalf of a client by an attorney registered with the clerk of the supreme court as an attorney in good standing under the requirements of the supreme court.
> (c) A statement and notice of intention to hold a lien filed under this section

4

must specifically set forth:
      (1) the amount claimed;
      (2) the name and address of the claimant;
      (3) the owner's:
            (A) name; and
            (B) latest address as shown on the property tax records of the county; and
      (4) the:
            (A) legal description; and
            (B) street and number, if any;
of the lot or land on which the house, mill, manufactory or other buildings, bridge, reservoir, system of waterworks, or other structure may stand or be connected with or to which it may be removed.

Ind. Code § 32-28-3-3.

The Plaintiffs argue that these statutes do not expressly require that a Lien Notice be filed in the identical corporation name as set forth in the Pre-lien Notice, that the Pre-lien Notice bearing the name "Von Tobel Lumber & Home Center, Inc." was sufficient to inform the Trust that a claim for materials furnished in the construction of the residence was being asserted by "Von Tobel Corporation," and that the Trust was not prejudiced. We agree.

In interpreting a statute, our goal is to determine and give effect to the intent of the legislature. *State v. Int'l Bus. Machs. Corp.*, 964 N.E.2d 206, 209 (Ind. 2012). In determining legislative intent, we consider the objects and purposes of the statute as well as the effects and repercussions of our interpretation. *Id.* "The legislative intent as ascertained from the provision as a whole prevails over the strict literal meaning of any word or term." *Id.* (quoting *Bushong v. Williams*, 790 N.E.2d 467, 471 (Ind. 2003)). Indeed, "[t]hese precepts have guided us in statutory interpretation for over a century." *Id.* (noting *Parvin v. Wimberg*, 130 Ind. 561, 571, 30 N.E. 790, 793 (1892) and observing

5

that when legislative intent is ascertained, "it will prevail over the literal import and the strict letter of the statute."). Where meaning is uncertain, "the courts will look also to the situation and circumstances under which [the statute] was enacted, to other statutes, if there are any upon the same subject, whether passed before or after the statute under consideration, whether in force or not, as well as to the history of the country, and will carefully consider in this connection the purpose sought to be accomplished." *Id.*; *cf. D & M Healthcare, Inc. v. Kernan*, 800 N.E.2d 989, 911 (Ind. 2003) (rejecting literal construction of Indiana Constitutional provision in light of history of the provision and subsequent practice).

Long ago, our Supreme Court set forth the purpose of our mechanics' lien legislation:

> The mechanics' lien laws of America, in general, reveal the underlying motive of justice and equity in dedicating, primarily, buildings and the land on which they are erected to the payment of the labor and materials incorporated, and which have given to them an increased value. The purpose is to promote justice and honesty, and to prevent the inequity of an owner enjoying the fruits of the labor and material furnished by others, without recompense.

*Moore-Mansfield Constr. Co. v. Indianapolis New Castle & Toledo Ry. Co.*, 179 Ind. 356, 372, 101 N.E. 296, 302 (1913).

In *Beneficial Financial Co. v. Wegmiller Bender Lumber Co., Inc.*, we expressly "reject[ed] the idea that our entire mechanics' lien statute must be strictly construed with such hypertechnicality so as to frustrate the remedial purpose of the legislation." 402 N.E.2d 41, 45 (Ind. Ct. App. 1980). There, we further determined that:

> The perfection and enforcement provisions of the statute should be fairly and reasonably construed and applied so as to afford materialmen and laborers the

6

> security intended upon substantial compliance with statutory requirements, keeping in mind the need to afford reasonable protection to the rights of other parties who may have acquired an interest in the party.

*Id.* Ultimately, we determined that we must assess whether there has been substantial compliance by the lien claimant. *Id.* In determining whether a lien claimant has substantially complied, we assess three factors: (1) "the degree of non-compliance with the letter of the statute," (2) "the policy which underlies the particular statutory provision in question," and (3) "the prejudice which may have resulted to either the owner of the property or other third parties who have an interest in the real estate." *Id.*

Here, the degree of non-compliance with the letter of the statute is minimal. Indeed, the statute does not require the filing of a Lien Notice in the identical name as the corporation that filed a Pre-lien Notice. *See* Ind. Code §§ 32-28-3-1(i), 32-28-3-3. Under comparable facts, in *Waverly Co. v. Moran Electric Service Inc.*, we long ago declined a similarly narrow reading of the mechanic's lien statutes. There, we determined that a Lien Notice claiming an amount was due and owing to "Moran Electric Service Company" was sufficient when the corporation that furnished the labor and materials was actually named "Moran Electric Service, Inc." 108 Ind. App. 75, 81, 26 N.E.2d 55, 57 (1940). We reasoned that although the two names were "not strictly idem sonans . . . they [were] of sufficient similarity as to have substantially the same meaning." *Id.* S*ee also Kendall Lumber & Coal Co. v. Roman*, 120 Ind. App 368, 374, 91 N.E.2d 187, 190 (1950) (rejecting the notion that "the statutory notice of the lien was fatally defective because it was signed 'Kendall Lumber and Coal Company' instead of 'Kendall Lumber and Coal Company, Inc.'"); *cf. Talbott v. Hale*, 72 Ind. 1, 4 (1880) (determining that

7

"Cincinnati, Peru and Chicago Railway Co." and "Chicago Railroad Company" were "the equivalents, each of the other, and had reference to, and were intended to designate the same corporation.").

In *Logansport Equip. Rental, Inc. v. Transco, Inc.*, 755 N.E.2d 1135, 1137 (Ind. Ct. App. 2001), we reiterated the policy that underlies the statutory notice provision discussed in *Waverly* and *Beneficial Fin.*, stating: "The filing requirements for a mechanic's lien serve two policy objectives: (1) to provide the record titleholder of the property with notice that a mechanic's lien has been placed upon the real estate; and (2) to put third party purchasers and money lenders on notice of the same fact."

Here, there are no potentially prejudiced third parties, and the only question is whether the notice to the Trust was sufficient. The Trust received the Pre-lien Notice from "Von Tobel Lumber & Home Center, Inc." and the Lien Notice from "Von Tobel Corporation." The Trust does not contend that it was misled or confused by the discrepancy. Further, when the Trust received its Pre-lien Notice, the Trust made an inquiry of Chi-Tec about it, demonstrating that the policy objectives of the statute were fulfilled. Finally, the Trust did not designate any evidence to the trial court of prejudice.

The variance between the name set out in the Pre-lien notice and that contained in the Lien Notice was minimal, did not undermine the statutory policy concerns regarding notice, and did not cause prejudice to the property owner or any third party.

Indiana's mechanic's lien legislation has a "remedial purpose." *Beneficial Fin.*, 402 N.E.2d at 45. It is structured to give the affected homeowner notice of a potential lien early in the construction process, so the party may take measures and direct funds

8

accordingly.  *See* Ind. Code § 32-28-3-1(i).  Here, the property owner had notice of the potential lien early in the construction process, but failed to take appropriate measures to see that funds were properly directed.

We reverse the summary judgment entered in favor of the trust and remand with instructions to enter summary judgment in favor of Von Tobel Corporation.

Reversed and remanded.

ROBB, C.J., and RILEY, J., concur.