

FILED

Jul 06 2016, 5:34 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Jonathan C. Little
Saeed & Little, LLP
Indianapolis, Indiana

Susan D. Rayl
Smith Rayl Law Office, LLC
Indianapolis, Indiana

Michael Ray Smith
Smith Rayl Law Office, LLC
Fishers, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR AMICUS
CURIAE SHEPHERD
COMMUNITY, INC. D/B/A
SHEPHERD COMMUNITY
CENTER
Philip R. Zimmerly
Bose McKinney & Evans LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

James E. Rogers,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 6, 2016

Court of Appeals Case No.
49A02-1508-CR-1033

Appeal from the
Marion Superior Court

The Honorable
Marc T. Rothenberg, Judge

Trial Court Cause No.
49G02-1408-FA-38280

**Kirsch, Judge.**

[1] During the pre-trial discovery phase of this criminal action, counsel for defendant James E. Rogers ("Rogers") took the audio-taped statement of a woman named Amy Wallace ("Wallace"), and, during the questioning by Roger's counsel, Wallace's counsel directed Wallace not to answer four questions on the basis of counselor/client privilege. Rogers filed a motion to compel, seeking an order that Wallace be ordered to answer the questions, and the trial court denied the motion after a hearing. Rogers filed this interlocutory appeal and raises four issues that we consolidate and restate as: whether the trial court abused its discretion when it denied Rogers's motion to compel on the basis that the information sought was privileged under Indiana Code section 25-23.6-6-1.

[2] We reverse and remand.

## Facts and Procedural History

[3] In August 2014, the State charged Rogers with two counts of Class A felony child molesting, one count of Class C felony intimidation, two counts of Class D felony child solicitation, and one count of Class D felony battery resulting in bodily injury.[1] The charges stemmed from allegations made by B.L., Rogers's then-eight-year-old niece, after she was at Rogers's house for a sleepover with her younger sisters and cousins. The allegations generally were that during the

---

[1] *See* Ind. Code §§ 35-42-4-3(b) (child molesting); 35-45-2-1(a)(1) (intimidation); 35-42-4-6(b) (child solicitation); and 35-42-2-1(a)(2)(b) (battery resulting in bodily injury).

night Rogers woke up B.L., forcibly grabbed her by the arm and removed her from the family room to the bathroom, forced B.L. to manually stimulate him, attempted to force her to fellate him, and threatened her with a knife. Rogers "steadfastly maintain[s]" that the allegations are "completely false." *Appellant's Br.* at 2, 4.

[4] Shepherd Community, Inc. d/b/a Shepherd Community Center ("Shepherd") is a faith-based, non-profit community center located on the near-eastside of Indianapolis that works with neighborhood youth and their families to break the cycle of poverty by providing programs and services to meet "the spiritual, physical, emotional, and academic needs of its neighbors." *Appellant's App.* at 131. Shepherd is partnered with an academy known as the Horizon Christian School, which provides pre-k through fourth grade education.

[5] At some point in time prior to the present allegations against Rogers, the alleged victim, B.L., had been a student at Horizon Christian School. While preparing Rogers's defense and investigating the case, Rogers's counsel learned that individuals on the staff at Shepherd, including its pastor and chief executive officer Reverend Jay Height, had concerns that B.L.'s mother ("Mother"), at some prior time, may have been prostituting B.L. in exchange for receipt of drugs for Mother's own use. Rogers's counsel also learned there may have been one or more Department of Child Services ("DCS") reports filed against B.L. or her parents that involved B.L.'s interaction with another child or children, either at home or at school. Given that B.L.'s accusations against Rogers reflected knowledge of sexual matters not ordinarily known to a child of

her age, and because the alleged prior sexual interactions with others may have affected B.L.'s sexual knowledge, Rogers sought to further investigate those prior situations.

[6] As is relevant here, Rogers took the audio-recorded deposition[2] of one of Shepherd's staff members, Wallace, who had provided social services support to B.L. and her family. Present for the deposition, in addition to Wallace, were 1) counsel for Rogers, 2) the prosecutor on behalf of the State, and 3) attorney Philip Zimmerly ("Zimmerly") on behalf of Shepherd and Wallace. Among other things, Rogers sought information from Wallace regarding her knowledge of B.L.'s prior exposure to or involvement in matters of a sexual nature. Zimmerly objected and instructed Wallace not to answer the following four questions based on the counselor/client privilege found in Indiana Code section 25-23.6-6-1:

> (1) Did your counseling relationship with B.L. and her family involve anything other than [Mother's] injury?[3]
>
> (2) What did Jay Height tell you that he heard about any sexual or otherwise inappropriate behavior between B.L. and other children?

---

[2] We note that in Marion Superior Court, "[a]ny sworn tape-recorded interview in which the prosecutor, the defense attorney and the witnesses are present shall be considered a deposition under the Indiana Trial Rules. Deputy prosecutors and public defenders shall cooperate in using such recorded statements instead of formal depositions under any circumstance that will expedite case preparation." Marion LR49-CR00-107(5); *Hale v. State*, No. 35S02-1601-CR-37 at *4 n.6 (Ind. June 16, 2016).

[3] The reference to Mother's "injury" refers to the fact that, at some prior point in time, Mother had been involved in a vehicular accident that resulted in the loss of both of her legs.

(3) What conversations did you have with other staff members at Horizon Christian School regarding their or your concerns about B.L.'s behavior prior to your employment at Shepherd that were related to previous [DCS] reports?

(4) Provide the names of parents who filed [DCS] reports on B.L. and/or her parents or siblings.

*Appellant's App.* at 155-56.

[7] Rogers filed a Motion for Order Compelling Deponent to Answer Deposition Questions ("Motion to Compel"). Thereafter, Wallace's counsel filed a Non-Party Deponent's Opposition to Motion to Compel, and the State also filed a response, opposing Rogers's Motion to Compel. In May 2015, the trial court held a hearing on the matter, at which counsel presented argument. The trial court advised the parties that, in order to make a decision, it desired to receive further testimony, either live or by affidavit, about such matters as: how Shepherd "is set up," Wallace's position at Shepherd and her relationship with B.L., and whether Wallace consults with other staff members. *Tr.* at 30. Therefore, additional proceedings on the Motion to Compel were held in June 2015. *Id.* at 37.

[8] At that hearing, Wallace testified and identified her position at Shepherd as "Family Ministries Team Leader." *Id.* at 38. Wallace holds a Bachelor's Degree in Social Work, but is not a licensed social worker. She testified that her primary responsibilities as Family Ministries Team Leader are to oversee the case management of various programs, such as home visits to teach

parenting skills and food distribution through food pantries. She described, "The majority of what I do is the case management social work end of it," but added that she does "some counseling with the families and children." *Id.* at 40.

[9]     When asked to further describe what she did in terms of counseling, Wallace stated that she provides direction to families and gives them options on how to address issues that arise, meeting with clients both in a one-on-one setting and in family settings. Wallace indicated that she considers those meetings confidential, but explained that, on occasion, she might share information with a Shepherd staff member if he or she "was directly involved" and had "a need to . . . know." *Id.* at 41. For instance, depending on the particular situation, Wallace might share information with a teacher at the Horizon Christian School. If faced with a situation where she had questions about whether it was appropriate to share information, Wallace testified that she would seek the instruction of her direct supervisor, Andrew Green ("Green"), who is a licensed social worker.

[10]    As for her relationship with B.L. and her family, Wallace testified that she had worked with all of the family members in her capacity as Family Ministries Team Leader. When asked "Did you work with [B.L.] in a counseling setting?" Wallace replied, "Not a set counseling session like you would consider meeting with a therapist. There were times I would talk to her." *Id.* at 45. She elaborated, "[I]f there was a concern, . . . I could pull her aside and just talk to her at the school. But as far as a counseling – full-out counseling, no." *Id.* at

46. Other times, Wallace met with B.L. and her family during home visits, although some home visits occurred at times when only Mother was home. At one or more of those visits, Mother told Wallace about "some situations with another student." *Id.* at 47. Wallace testified that she would have advised Mother that what she told Wallace was confidential. *Id.*

[11] Reverend Height, who is both the pastor and executive director of Shepherd, also testified. Reverend Height's recollection was that he only spoke with B.L. on occasions when her family was present and that he did not speak with her individually at any time. Reverend Height testified that, when speaking with the family, he would have advised them that they were speaking to him "as their pastor" and that what they told him would be confidential.[4] *Id.* at 51-52. Upon questioning, Reverend Height acknowledged that sometimes Mother's friends were present when he talked with Mother or with the family. *Id.* at 56. He recalled that on one occasion he shared information he obtained during a pastoral visit with Wallace due to her role "as case manager for that family," and he felt she needed to be aware of the information "for the safety of the children." *Id.* at 52-53.

[12] The trial court took the matter under advisement, and after receiving additional authority from the parties, it issued an order in July 2015 denying Rogers's Motion to Compel. It stated:

---

[4] Further questioning of Reverend Height was suspended pending this appeal. *See Appellant's Br.* at 6 n.3.

> The Court finds that communications within Amy Wallace's
> position as a "Family Ministries Team Leader" at Horizon
> Christian School at Shepherd Community Center are privileged
> under Indiana Code 25-23.6.

*Id.* at 65.  Upon Rogers's request, the trial court certified the questions, and this

court granted Rogers's request to file an interlocutory appeal.[5]

## Discussion and Decision

[13]  Generally, the grant or denial of a discovery motion is within the trial court's

discretion and will be overturned only for an abuse of discretion.  *Williams v.*

*State,* 819 N.E.2d 381, 384 (Ind. Ct. App. 2004), *trans. denied.*  An abuse of

discretion will not be found unless the decision is clearly against the logic and

effect of the facts and circumstances.  *Howard v. Dravet*, 813 N.E.2d 1217, 1221

(Ind. Ct. App. 2004).  However, to the extent the court's order is based on

interpretation of a statute, our review is *de novo.*  *State v. Int'l Bus. Machs. Corp.*,

964 N.E.2d 206, 209 (Ind. 2012).  We therefore "independently review the

statute's meaning and apply it to the facts of the case under review."  *Id.*

[14]  The scope of discovery is broad, as provided in Indiana Trial Rule 26(B):

---

[5] We note that after Shepherd filed its Brief of Amicus Curiae on March 18, 2016, Rogers filed a Verified
Motion for Leave to File Amended Notice of Appeal, in which Rogers sought request to file an Amended
Notice of Appeal in order to name Wallace as a Non-Party/Appellee.  We will deny Rogers's Verified
Motion by separate order.

(B) Scope of discovery. Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

(1) In general. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject-matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

*Howard*, 813 N.E.2d at 1220.

Our Supreme Court has recognized that "the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense,'" but that "'[t]here is no general constitutional right to discovery in a criminal case.'" *In re Crisis Connection, Inc.*, 949 N.E.2d 789, 800 (Ind. 2011) (quoting *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) and *Kubsch v. State*, 784 N.E.2d 905, 923-24 (Ind. 2003)). In determining whether a defendant's constitutional right to present a complete defense would be violated by nondisclosure of information, courts must balance the interest advanced by the privilege at issue against the individual's right to prepare his defense. *See Crisis Connection, Inc.*, 949 N.E.2d at 801 (recognizing need to weigh potential value of evidence against justification for its exclusion).

[16]   Here, Wallace was instructed by her counsel[6] not to answer the four questions at issue on the basis that they asked for matters within the scope of the counselor/client privilege.  In Indiana, privileges are statutory in nature, and it is within the General Assembly's power to create them.  *Id.* at 793.  A grant of privilege and the scope of that privilege are policy choices of the Legislature.  *Int'l Bus. Machs. Corp.*, 964 N.E.2d at 210.  "And provided the result is constitutional, choices of policy are solely within the purview of the Legislature."  *Id*.  As our Supreme Court has acknowledged, when the General Assembly creates a privilege, it puts two policies of the law in direct conflict:

> On the one hand is a policy which dictates exclusion of material and relevant evidence for its effectuation; on the other is the policy which favors full disclosure of all relevant facts at trial in order to arrive at a just determination of the issues presented. While the latter must give sway to the former where applicable, it would seem unwise indeed to give unwarranted effect to the former so as to utterly and unreasonably frustrate the fact finding process.

*Id*. (quoting *Collins v. Blair*, 256 Ind. 230, 236-37, 268 N.E.2d 95, 98 (1971) and referring to Indiana's physician-patient privilege, peer review privilege, and probation officer-juvenile privilege).

---

[6] In the trial court, attorney Philip Zimmerly had filed an appearance on behalf of both Shepherd Community Center and Wallace.

[17] The counselor/client evidentiary privilege is established by Indiana Code section 25-23.6-6-1 and provides, in part, as follows:

> Matters communicated to a counselor in the counselor's official capacity by a client are privileged information and may not be disclosed by the counselor to any person, except under the following circumstance:
>
> . . . .
>
> (2) If the communication reveals the contemplation or commission of a crime or a serious harmful act.
>
> (3) If:
>
>> (A) the client is an unemancipated minor or an adult adjudicated to be incompetent; and
>>
>> (B) the information communicated to the counselor indicates the client was the victim of abuse or a crime.
>
> . . . .
>
> (8) Circumstances under which the privileged communication is abrogated under Indiana law.

The purpose of Indiana Code section 25-23.6-6-1 is to grant a privilege to protect confidential communication between a counselor and the counselor's client. *J.B. v. E.B.*, 935 N.E.2d 296, 299 (Ind. Ct. App. 2010) (citing *State v. Pelley*, 828 N.E.2d 915, 918 (Ind. 2005)). "The counselor/client privilege is in derogation of common law, so it must be strictly construed." *Id*. at 299-300.

[18] We begin by examining the four questions at issue, and, more particularly, we ask: do they seek to obtain information "matters communicated to a counselor in the counselor's official capacity by a client." *See* Ind. Code § 25-23.6-6-1. Rogers asserts that the four questions, other than possibly the first one, do not invoke application of the privilege at all because they do not seek information communicated from B.L., or even her family, to Wallace. That is, even if Wallace is a qualified social worker within the counselor/client privilege (which Rogers argues she is not because she is not a licensed social worker), the information sought is not the type of information that falls within counselor/client privilege. The State, however, maintains that "[t]he information about which [Rogers] seeks discovery is information communicated to Wallace in her role as a social worker and as such is privileged under Indiana Code section 25-23.6-6-1 . . . and is not subject to disclosure." *Appellant's Br.* at 12.

[19] The first of the disputed questions asks, "Did your counseling relationship with B.L. and her family involve anything other than [Mother's] injury?" *Appellant's App.* at 155. This appears to require a yes or no response, and does not ask Wallace to identify the substance of what B.L. or her family told Wallace, although any follow up likely would do so. The fourth question asks Wallace to "Provide the names of parents who filed [DCS] reports on B.L. and/or her parents or siblings." *Id.* at 156. This question does not ask Wallace to reveal what B.L. or her family said to her concerning the content of the reports, nor

otherwise inquire into the substance of the DCS reports.[7] The second and third posed questions – which ask, respectively, "What did Jay Height tell you that he heard about any sexual or otherwise inappropriate behavior between B.L. and other children?" and "What conversations did you have with other staff members at Horizon Christian School regarding their or your concerns about B.L.'s behavior prior to your employment at Shepherd that were related to previous [DCS] reports?"— inquire about what Shepherd staff members knew or told each other, not what B.L. told Wallace. *Id*. at 155. Nevertheless, assuming without deciding that the sought-after information in any of the questions *could* seek perceived privileged information, we proceed to address the scope of the counselor/client privilege and, more specifically, whether Wallace's communications with B.L. and her family are privileged and undiscoverable.

[20]  At its core, the inquiry in this appeal is whether Wallace, who is an unlicensed social worker employed at Shepherd as Family Ministries Team Leader, is a "counselor" as contemplated by Indiana Code section 25-23.6-6-1 such that her communications with B.L. and her family are privileged. "Counselor" is defined in Article 23.6 (Marriage and Family Therapists) as follows:

> Except as provided . . . "counselor" refers to a social worker, a
> clinical social worker, a marriage and family therapist, a mental

---

[7] We recognize that, generally, reports prepared by the Department of Child Services on matters of child abuse and neglect are confidential and may be made available only to certain persons and entities. Ind. Code §§ 31-33-18-1, -2.

health counselor, an addiction counselor, or a clinical addiction counselor *who is licensed under this article*.

Ind. Code § 25-23.6-1-3.8 (emphasis added). The parties in this case are in disagreement as to whether the statute's ending phrase "who is licensed under this article" applies to all of the six types of professions listed, or whether it applies only to the last one in the list.

[21] Rogers's position is that "who is licensed" applies to all six types of professions listed, including social workers. Therefore, "counselor" as used in the counselor/client privilege statute refers to, as is relevant here, *licensed* social workers, and because unlicensed social workers are not within the definition of "counselor," the counselor/client privilege does not apply to Wallace, and her communications with B.L. are not privileged and are discoverable. Consequently, Rogers argues, the trial court should have granted his Motion asking the trial court to compel Wallace to answer the questions at issue. The State, on the other hand, asserts that the phrase "who is licensed" applies only to the last of the six professions in the statute's list, namely "a clinical addiction counselor." That is, the State argues, the privilege applies to "a social worker . . . or a clinical addiction counselor who is licensed[,]" and as the privilege extends to communications with unlicensed social workers, Wallace's communications involving B.L. are privileged and not discoverable.

[22] The primary goal when interpreting a statute is to effectuate the legislative intent. *State v. I.T.*, 4 N.E.3d 1139, 1143 (Ind. 2014); *State v. Prater,* 922 N.E.2d 746, 748 (Ind. Ct. App. 2010), *trans. denied*. The best evidence of that intent is a

statute's text. *Adams v. State*, 960 N.E.2d 793, 798 (Ind. 2012). When a statute is clear and unambiguous, we apply the plain and ordinary meaning of the language. *Id.* "[T]here is no need to resort to any other rules of statutory construction[,]" and "we need not delve into legislative history[.]" *Id.* However, "when a statute is susceptible to more than one interpretation, it is deemed ambiguous and is thus open to judicial construction." *In re Howell*, 27 N.E.3d 723, 726 (Ind. 2015). In that case, we resort to the rules of statutory construction. *Adams*, 960 N.E.2d at 798.

> [W]here meaning is uncertain, the courts will look also to the situation and circumstances under which [the statute] was enacted, to other statutes, if there are any upon the same subject, whether passed before or after the statute under consideration, whether in force or not, as well as to the history of the country, and will carefully consider in this connection the purpose sought to be accomplished.

*Int'l Bus. Machs. Corp.*, 964 N.E.2d at 209 (citations and quotation marks omitted). Courts should avoid interpretations that depend on selective reading of individual words. *Nash v. State*, 881 N.E.2d 1060, 1063 (Ind. Ct. App. 2008), *trans. denied*. Statutes relating to the same general subject matter should be construed together so as to produce a harmonious statutory scheme. *Marion Cnty. v. State,* 888 N.E.2d 292, 303 (Ind. Ct. App. 2008). In a criminal case, we construe an ambiguous statute in favor of the defendant. *Adams*, 906 N.E.2d at 798 (citing *State v. Turner,* 567 N.E.2d 783 (Ind. 1991) (applying rule of lenity)).

[23] Here, as is evidenced by the parties' arguments, application of the phrase "who is licensed under this article" can be interpreted in two different ways, and each yields a different result; thus, Indiana Code section 25-23.6-6-1 is subject to judicial interpretation. Our Supreme Court has recognized that, in enacting the counselor/client privilege, the Indiana General Assembly extended to counselors the same privilege that exists for physicians. *Pelley*, 828 N.E.2d at 918. "[T]he focus of both privileges is the same, namely, protecting communication." *Id*. 918-19. "The intent and dominant purpose of the statute is to grant a privilege to protect confidential communication between a counselor and the counselor's client." *Id*.

[24] In support of its position that "who is licensed under this article" applies only to the last in the series of professions listed, the State urges us to apply a grammatical construction known as "the last antecedent rule," which states that "descriptive words in a phrase should, in the absence of punctuation, be referred to their nearest antecedent[.]" *Appellee's Br*. at 16. That is, as applied to a statute, "where one phrase of a statute modifies another, the modifying phrase applies only to the phrase immediately preceding it, unless there is a comma between the modifier and the preceding phrase." *Id*. Applying this principle to the present statute, the State argues that "who is licensed under this article" phrase refers only to "a clinical addiction counselor," which immediately precedes "who is licensed," and that it does not apply to any of the other categories of professionals listed because the General Assembly did not place a comma before the modifying phrase. However, a review of the legislative

amendments to the statute at issue informs our interpretation and suggests otherwise.

[25] Effective July 2009, the General Assembly amended Indiana Code section 25-23.6-1-3.8, which defines "counselor," by adding two more categories of professions to the list. The amendment added and deleted language as follows:

> Sec. 3.8. Except as provided in IC 25-23.6-7-5, ~~as used in this chapter,~~ "counselor" refers to a social worker, <u>a</u> clinical social worker, <u>a</u> marriage and family therapist, ~~or~~ a mental health counselor, <u>an addiction counselor, or a clinical addiction counselor</u> who is licensed under this article.

P.L. 122-2009, Section 14. Thus, two types of professions, namely an addiction counselor and a clinical addiction counselor, were inserted into the list before the phrase "who is licensed under this article." This manner of amendment reflects that, contrary to the State's argument, the "who is licensed" applies to all those listed, not just the last one. If, as the State claims, the "who is licensed" only applies to the last profession listed, then before amendment the "who is licensed" applied to only "a mental health counselor," as that was the last profession that was listed in the series; consequently, after amendment, the statute would need to have read: ". . . a mental health counselor who is licensed, an addiction counselor, or a clinical addiction counselor who is licensed." The statute does not so provide, and the amendment suggests to us that the Legislature intended the "who is licensed" phrase to apply to all categories of professions listed, not just the final one in the series.

[26]    Our finding in this regard is further supported by viewing other related statutes. For instance, Indiana Code section 25-23.6-6-1 reflects that the counselor-client privilege is subject to several exceptions, under which the privilege does not apply, and, in particular, Subsection (8) provides that the privilege is unavailable in "circumstances under which the privileged communication is abrogated under Indiana law." One of the circumstances when the privilege is abrogated is found in Indiana Code section 31-32-11-1, entitled "Admissibility of privileged communications," and that statute abrogates the counselor/client privilege in proceedings resulting from reports of child abuse. It reads, in pertinent part:

> The privileged communication between:
>
> . . . .
>
> (3) a:
>
>> (A) *licensed* social worker;
>>
>> (B) *licensed* clinical social worker;
>>
>> (C) *licensed* marriage and family therapist;
>>
>> (D) *licensed* mental health counselor;
>>
>> (E) *licensed* addiction counselor; or
>>
>> (F) *licensed* clinical addiction counselor;

> *and a client* of any of the professionals described in clauses (A) through (F);

> . . . .

> is not a ground for excluding evidence in any judicial proceeding resulting from a report of a child who may be a victim of child abuse or neglect or relating to the subject matter of the report or failing to report as required by IC 31-33.

Ind. Code § 31-32-11-1 (emphasis added). Of import is the fact that Indiana Code section 31-32-11-1 lists the same six categories of professions, in the same order, as are found in Indiana Code section 25-23.6-1-3.8, and it refers to "the privileged communication" that exists between each of those six licensed professionals and his or her client. As we have held, statutes relating to the same subject matter are *in pari material* and should be construed together so as to produce a harmonious statutory scheme. *Glover v. State*, 760 N.E.2d 1120, 1124 (Ind. Ct. App. 2002), *trans. denied*. We find that this statute tracks Indiana Code section 25-23.6-1-3.8 (which defines "counselor" for purposes of the counselor/client privilege) and that the State's limited reading – which suggests that the licensing requirement applies only to the last in the series – is not harmonious with Indiana Code section 31-32-11-1.

[27] As the State correctly observes, "social worker" is defined in Indiana Code section 25-23.6-1-10 as "an individual who graduates from a program accredited by the Council on Social Work Education," as Wallace did, and that this definition does not require that a social worker hold a license. The State

also reminds us that "licensed social worker" is separately defined. Ind. Code § 25-23.6-1-4.8 (licensed social worker means "an individual who is licensed under IC 25-23.6-5."). The State asserts that the fact that "social worker" is so defined reflects the Legislature's intent that unlicensed social workers are within the scope of the counselor/client privilege, making Wallace's communications privileged. The State argues that "[t]he only category for which the General Assembly has intentionally drawn a distinct line between the categories of licensed and unlicensed individuals is the category of social workers, and for purposes of defining the term "counselor," the General Assembly deliberately chose to use the broader term that encompasses unlicensed individuals rather than the statutorily-defined narrower term limited to licensed individuals." *Appellee's Br.* at 15-16.

[28] However, there are other statutes to consider in the equation. For instance, Indiana Code section 25-23.6-4-1, found in a chapter titled "Social Worker; Unlawful Practices; Penalty," provides, in pertinent part, that an individual may not "profess to be a social worker . . . use the title social worker . . . or use any other title containing the words social worker  . . . *unless the individual is licensed* under this article." Ind. Code § 25-23.6-4-1 (emphasis added). In fact, doing so constitutes a Class A misdemeanor. Ind. Code § 25-23.6-4-4. Another subsection provides, "A person who is not licensed under this article" but who provides social services at certain identified entities, "may use the title 'social service designee.'" Ind. Code § 25-23.6-4-3.

[29] The State directs us to another subsection, Indiana Code section 25-23.6-4-2, which reflects that, so long as the individual does not use the title "social worker," the unlawful practices statute "may not be construed to limit the social work or clinical social work services provided by[,]" among others, members of the clergy, school counselors, governmental employees, and employees or volunteers "for an organization performing charitable, religious, or educational functions, providing pastoral assistance, or other assistance." Ind. Code § 25-23.6-4-2. The State urges that this statute expressly allows individuals such as Wallace (an employee of a non-profit who provided social services and used the title "Family Ministries Team Leader," not social worker) to provide social services work and that this permission reflects the General Assembly's intention that such communications be privileged and undiscoverable.[8] We disagree. Although it was permissible for Wallace, in her role as Family Ministries Team Leader at Shepherd, to provide social services work to individuals and their families, this ability to provide services does not mandate a finding that her communications are privileged under the counselor/client privilege found in Indiana Code section 25-23.6-6-1. Rather, we find that the legislative history of the term "counselor" reveals that, for purposes of the counselor-client privilege, the Legislature intended only licensed social workers to be covered by that

---

[8] "The practice of social work" is defined as "professional services that are designed to effect change in human behavior, emotional responses, and social conditions of individuals, couples, families, groups, and communities and that involve specialized knowledge and skill related to human development, including an understanding of unconscious motivation, the potential for human growth, the availability of social resources, and knowledge of social systems. The term includes planning, administration, and research for community social services delivery systems." Ind. Code § 25-23.6-1-8.

privilege. Related statutes support this determination, as well as the principles that evidentiary privileges such as the counselor/client privilege must be strictly construed and that, in criminal cases, ambiguous statutes should be construed in favor of a defendant. We thus conclude that a social worker must be licensed in order to fall within the scope of the counselor/client privilege found in Indiana Code section 25-23.6-6-1.[9]

[30] We find that this case presents a similar set of facts, although through a different procedural context, as our Supreme Court encountered in *Hall v. State*, 36 N.E.3d 459 (Ind. 2015), and even though Hall's appeal occurred after he was convicted and involved application of Indiana Evidence Rule 412, known as the Rape Shield Rule,[10] we nevertheless find *Hall* worthy of brief discussion as it recognizes, as least implicitly, the intended breadth of our discovery rules.

[31] There, Hall, who was the boyfriend of the child's mother, was convicted of having molested the mother's minor daughter. Prior to trial, Hall was aware of a prior incident, sexual in nature, which had occurred several years before between the child-victim and a boy of her age in Kentucky, and Hall sought to

---

[9] On appeal, Rogers offers the alternative argument that, "even if privilege does apply [to Wallace], the information is excepted from the privilege under 25-23.6-6-1(2) because the information communicated indicates B.L. was the victim of crime (child solicitation) or abuse[.]" *Appellant's Br.* at 10. Because we find the "who is licensed" applies to all the categories of professionals in the list – and thus the counselor/client privilege does not extend to Wallace – we do not reach this argument.

[10] Indiana Evidence Rule 412 prohibits, subject to listed exceptions, the admission into evidence in a civil or criminal proceeding involving alleged sexual misconduct evidence offered to prove a victim's prior sexual behavior or sexual predisposition.

ask the mother about it during a deposition. She refused to answer, the deposition question was certified, and Hall filed a motion to compel her to answer it, arguing that "the information requested related to evidence that the alleged victim may have previously accused another and then recanted, which . . . is highly relevant in a case involving an accusation of improper sexual conduct." *Id*. at 462-63. The trial court denied Hall's motion. *Id*. at 463. Prior to the start of trial, the State filed a motion in limine to exclude any evidence regarding prior sexual conduct of, among others, the child victim pursuant to Indiana Evidence Rule 412, known as Indiana's Rape Shield Rule. *Id*.

[32] On appeal to this court, Hall argued that the trial court's ruling prevented him from obtaining information about what he asserted was a prior false accusation of sexual misconduct by the child-victim, and thus, the ruling deprived him of the ability to fully confront his accuser under the Confrontation Clause. *Hall v. State*, 15 N.E.3d 1107, 1119 (Ind. Ct. App. 2014), *trans. granted*. A majority of this court agreed with Hall and found that by failing to require the child-victim's mother to answer the deposition question about "what had happened" between the victim and a boy in Kentucky, the trial court prevented Hall from obtaining discovery on a relevant non-privileged matter that bore on the child-victim's credibility. *Id*. at 1121. On transfer, our Supreme Court stated,

> Like all three judges on the Court of Appeals, we find that [the mother's] response to Hall's question about the Kentucky incident *could* have revealed potentially relevant information under Indiana Trial Rule 26(B)(1) that *could* have provided Hall with knowledge of what he classifies as [the child's] alleged prior false accusation of sexual misconduct in order to *potentially*

establish its admissibility at trial. Accordingly, the trial court should have granted Hall's motion to compel discovery in order to fully secure his Sixth Amendment right to confront witnesses against him.

*Hall*, 36 N.E.3d at 467.[11]

[33] Finding as we do that the counselor/client privilege of Indiana Code section 25-23.6-6-1 does not include communications with unlicensed social workers, we hold that the trial court erred in denying Rogers's Motion to Compel on that basis, and we reverse and remand for further proceedings consistent with this opinion.[12]

[34] Reversed and remanded.

[35] Riley, J., and Pyle, J., concur.

---

[11] *But see In re Crisis Connection, Inc.*, 949 N.E.2d 798 (Ind. 2011) (holding that defendant in child molesting prosecution was not entitled to inspect records of nongovernmental counseling agency because neither the Sixth Amendment nor Due Process Clause requires disclosure of information protected by victim/advocate privilege, Indiana Code section 35-27-6-9). We make no finding as to whether B.L. is a "Victim" or Shepherd is a "Victim Service Provider" under Indiana Code chapter 36-27-6, as that issue is not before us.

[12] The State observes that, with respect to discovery of non-privileged information, trial courts are to follow a three-step analysis to determine whether discovery is authorized, including whether the information sought is "material to the defense," and they have discretion to limit discovery that, among other things, is unreasonably cumulative or duplicative, can be obtained from another more convenient source, is less burdensome, or less expensive. *Appellee's Br.* at 30. Although the State urges us to find that Rogers has not made the adequate showing that the information sought is material to his defense, is calculated to lead to admissible evidence, or can be obtained elsewhere, we make no determination on those matters. Rather, we find only that the four questions that deponent Wallace did not answer are not included in the counselor/client privilege, and we defer to the trial court on remand to assess if and to what extent the information is discoverable, whether in-camera as the State suggests, or otherwise.